IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| WILLIAM JOHNSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 07 C 2057 |
| | ) | |
| DONALD HULICK, Warden, | ) | |
| Menard Correctional Center, | ) | The Honorable |
| | ) | Michael P. McCuskey, |
| Respondent. | ) | Chief Judge Presiding. |

## MOTION TO DISMISS § 2254 PETITION AS TIME-BARRED

Pursuant to 28 U.S.C. §2244(d)(1)(A) and Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts,[1] respondent DONALD HULICK moves this Court to dismiss petitioner's petition for writ of habeas corpus as untimely and, in support, states as follows:

1.    Petitioner William Johnson, identified as prisoner number B23496, is in the custody of Donald Hulick, the warden of the Menard Correctional Center in Menard, Illinois.

---

[1] Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts contemplates that the respondent's response to the petition may be by "motion, or other response." *See* Advisory Committee Notes to Rule 4, 2004 Amendments ("[t]he amended rule [4] reflects that the response to the habeas petition may be a motion"); *see also* Advisory Committee Notes to Rule 5, 2004 Amendments (Rule 4 permits the filing of pre-answer motions to dismiss, and "reflects the view that if the court does not dismiss the petition, it may require (or permit) the respondent to file a motion.").

2.     In March 1993, following a jury trial in the circuit court of Macon County, petitioner was sentenced to an aggregate 90-year term of imprisonment on aggravated criminal sexual assault and home invasion convictions.  *See People v. Johnson*, 634 N.E. 2d 1285, 1286 (Ill.App. 1994) (Exhibit A).

3.     Petitioner appealed to the Illinois Appellate Court, Fourth District, raising the following grounds for relief:

(1)     the trial court erroneously admitted DNA testimony linking petitioner to the crimes;

(2)     the trial court improperly permitted the State to elicit testimony that petitioner had staked out the victim's home prior to the assaults; and

(3)     the trial court abused its discretion in imposing an excessive sentence.

*Id.*  On June 7, 1994, the state appellate court affirmed.  *Id.*  Petitioner then filed a counseled petition for leave to appeal (PLA) in the Illinois Supreme Court, which was denied on October 6, 1994.  *See* PLA, *People v. Johnson*, No. 77668 (Exhibit B); Order Denying PLA, *People v. Johnson*, No. 77668 (Exhibit C).  Petitioner did not file a postconviction petition.  *See* Pet. at ¶ 11.

4.     On February 19, 2004, petitioner filed a petition for relief from judgment, titled, "Collateral Attack Upon a Void Judgment," pursuant to 735 ILCS 5/2-1401(f).  Petitioner argued that his aggregate sentence exceeded the maximum allowed under Illinois statute.  *See* Petition for Relief from Judgment, *People v. Johnson,* 92-CF-954 (Exhibit D).  The State filed a motion to dismiss the petition, which the state trial court granted on June 22, 2004.  *See* Motion to Dismiss, *People*

*v. Johnson,* 92-CF-954 (Exhibit E); Docket Entry (Exhibit F).  Petitioner appealed, and the state appellate court affirmed.  *See People v. Johnson*, Rule 23 Order, 4-04-0709 (Ill.App. Aug. 1, 2006) (Exhibit G).  The supreme court denied leave to appeal on November 29, 2006.  *See* PLA, *People v. Johnson*, No. 103308 (Exhibit H); Order denying PLA, *People v. Johnson*, No. 103308 (Exhibit I).

      5.     On February 22, 2007, petitioner filed the instant petition for writ of habeas corpus, raising the following claims:

    (1)     the trial court violated petitioner's constitutional rights by imposing consecutive sentences that exceeded the total authorized by Illinois law; and

    (2)     appellate counsel was ineffective on appeal in the 2-1401 proceedings for failing to argue that the state trial court should have provided counsel for the 2-1401 proceedings in the trial court.

*See* Pet. at 5.

      6.     The following state court materials have been electronically filed as exhibits to this Motion to Dismiss:

Exhibit A:    *People v. Johnson*, 634 N.E. 2d 1285 (Ill.App. 1994);

Exhibit B:    PLA, *People v. Johnson*, No. 77668;

Exhibit C:    Order denying PLA, *People v. Johnson*, No. 77668;

Exhibit D:    Petition for relief from judgment, *People v. Johnson,* 92-CF-954;

Exhibit E:    Motion to Dismiss, *People v. Johnson,* 92-CF-954;

Exhibit F:    Docket entry, *People v. Johnson,* 92-CF-954;

Exhibit G:    *People v. Johnson*, Rule 23 Order, 4-04-0709 (Ill.App. Aug. 1,

3

2006);

Exhibit H:    PLA, *People v. Johnson*, No. 103308;

Exhibit I:    Order denying PLA, *People v. Johnson*, No. 103308.

7.    The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)

imposes a one-year statute of limitations on habeas corpus petitions.  28 U.S.C.

§ 2244(d)(1).  Section 2244(d) provides as follows:

(1)    A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of

   (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

   (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

   (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

   (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. §2244(d).

8.    The Seventh Circuit has recognized a one-year grace period in which petitioners whose convictions became final before the passage of AEDPA may petition for habeas relief.  *Lindh v. Murphy*, 96 F.3d 856, 866 (7th Cir. 1996) (en banc), *rev'd on other grounds*, 521 U.S. 320 (1997).  A petitioner whose conviction became final before April 24, 1996 — the effective date of AEDPA — is allowed one year after AEDPA's passage to file his petition.  *Lindh*, 96 F.3d at 866; *Newell v. Hanks*, 283 F.3d 827, 833 (7th Cir. 2002) (holding that one-year grace period expired on April 24, 1997).

9.    The grace period applies to this case.  Petitioner's PLA to the Illinois Supreme Court was denied on October 6, 1994.  Because petitioner did not file a petition for writ of certiorari to the United States Supreme Court, his conviction became "final" 90 days later on January 4, 1995.  *See* USSC Rule 13(1); *Balsewicz v. Kingston*, 425 F.3d 1029, 1032 (7th Cir. 2005) (holding that a pre-AEDPA conviction is "final" when direct appeal of the conviction in the state courts is concluded, including the 90-day period in which a petition for writ of certiorari could be filed in the United States Supreme Court).  Because petitioner's conviction became final before the effective date of AEDPA, petitioner had until April 24, 1997, to petition for habeas corpus relief.  *See Lindh*, 96 F.3d at 866; *Newell*, 283 F.3d at 833.  The habeas petition is untimely on its face, as petitioner did not file it until February 22, 2007.[2]

---

[2]  Under the mailbox rule, a *pro se* prisoner's petition for writ of habeas corpus is deemed filed on the date that it is given to the proper prison authorities

10.    Moreover, petitioner cannot claim that his section 2-1401 petition sufficiently tolled the statute.  Under § 2244(d)(2), the limitations period "is tolled during time that 'a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending.'" *Gutierrez v. Schomig*, 233 F.3d 490, 491-92 (7th Cir. 2000) (quoting 28 U.S.C. § 2244(d)(2)).  "An application is 'properly filed' if its delivery and acceptance 'are in compliance with the applicable laws and rules governing filings.'"  *Gray v. Briley*, 305 F.3d 777, 778-79 (7th Cir. 2002) (quoting *Artuz v. Bennet*, 531 U.S. 4, 8 (2000)).  By the time that petitioner filed his petition for relief from judgment in the circuit court of Macon County – February 19, 2004 – the one-year limitations period had long since expired.  In fact, nearly eight years elapsed before petitioner took any action which might have served to toll the limitations period.  Accordingly, petitioner can find no relief in AEDPA's tolling provision.  Therefore, petitioner is barred from pursuing federal habeas corpus relief in this Court, and his petition should be dismissed with prejudice as untimely.

11.    Petitioner has not demonstrated – or alleged – any "extraordinary circumstances" that would warrant equitable tolling of the statute of limitations. *Gildon v. Bowen*, 384 F.3d 883, 887 (7th Cir. 2004).  Thus, that doctrine is inapplicable here.

---

for mailing, *Jones v. Bertrand*, 171 F.3d 499, 502 (7th Cir. 1999), and respondent calculates the timeliness of this habeas petition under that rule.

## **CONCLUSION**

This Court should dismiss, with prejudice, petitioner's petition for writ of habeas corpus.  If this Court determines that this habeas petition is not time-barred, respondent requests thirty days from the entry of the Court's order denying this motion to address any procedural defaults and/or the merits of the claims in a subsequent submission.

July 27, 2007                                            Respectfully submitted,


                                                        LISA MADIGAN
                                                        Attorney General of Illinois

                                        By:     s/ Dale M. Park
                                                DALE M. PARK, Bar # 6280822
                                                Assistant Attorney General
                                                100 West Randolph Street, 12th Floor
                                                Chicago, Illinois 60601
                                                PHONE: (312) 814-2197
                                                FAX: (312) 814-2253
                                                EMAIL: dpark@atg.state.il.us

7

## <u>CERTIFICATION</u>

I hereby certify that on July 27, 2007, I electronically filed respondent's **MOTION TO DISMISS** with the Clerk of the United States District Court for the Central District of Illinois, Urbana Division, using the CM/ECF system, and that on the same day, I mailed the same document to the following non-registered party:

William Johnson, B23496
Menard Correctional Center
P.O. Box 711
Menard, IL 62259

LISA MADIGAN
Attorney General of Illinois

By:     <u>s/ Dale M. Park</u>
DALE M. PARK, Bar # 6280822
Assistant Attorney General
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601
PHONE: (312) 814-2197
FAX: (312) 814-2253
EMAIL: dpark@atg.state.il.us

E-FILED
Friday, 27 July, 2007  11:55:43 AM
Clerk, U.S. District Court, ILCD

IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| WILLIAM JOHNSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 07 C 2057 |
| | ) | |
| DONALD HULICK, Warden, | ) | |
| Menard Correctional Center, | ) | The Honorable |
| | ) | Michael P. McCuskey, |
| Respondent. | ) | Chief Judge Presiding. |

### INDEX OF EXHIBITS CITED IN RESPONDENT'S
### MOTION TO DISMISS § 2254 PETITION AS TIME-BARRED

Exhibit A:     *People v. Johnson*, 634 N.E. 2d 1285 (Ill.App. 1994);

Exhibit B:     PLA, *People v. Johnson*, No. 77668;

Exhibit C:     Order denying PLA, *People v. Johnson*, No. 77668;

Exhibit D:     Petition for relief from judgment, *People v. Johnson,* 92-CF-954;

Exhibit E:     Motion to Dismiss, *People v. Johnson,* 92-CF-954;

Exhibit F:     Docket entry, *People v. Johnson,* 92-CF-954;

Exhibit G:     *People v. Johnson*, Rule 23 Order, 4-04-0709 (Ill.App. Aug. 1,

               2006);

Exhibit H:     PLA, *People v. Johnson*, No. 103308;

Exhibit I:     Order denying PLA, *People v. Johnson*, No. 103308.

Respectfully Submitted,

LISA MADIGAN
Attorney General of Illinois

By:    s/ Dale M. Park
       DALE M. PARK, Bar # 6280822
       Assistant Attorney General
       100 West Randolph Street, 12th Floor
       Chicago, Illinois 60601
       PHONE: (312) 814-2197
       FAX: (312) 814-2253
       EMAIL: dpark@atg.state.il.us

Westlaw.

634 N.E.2d 1285

262 Ill.App.3d 565, 634 N.E.2d 1285, 199 Ill.Dec. 931
**(Cite as: 262 Ill.App.3d 565, 634 N.E.2d 1285)**

Page 1

▷
People v. Johnson
Ill.App. 4 Dist.,1994.

Appellate Court of Illinois,Fourth District.
The PEOPLE of the State of Illinois,
Plaintiff-Appellee,
v.
William JOHNSON, Defendant-Appellant.
**No. 4-93-0558.**

Argued Feb. 16, 1994.
Decided June 7, 1994.

Defendant was convicted in the Circuit Court, Macon County, John K. Greanias, J., of aggravated criminal sexual assault and home invasion, and he appealed. The Appellate Court, Steigmann, J., held that: (1) trial court was not required to conduct pretrial hearing prior to admitting deoxyribonucleic acid (DNA) identification testimony; (2) trial court could admit that testimony; (3) trial court could admit testimony that defendant had looked into windows of victim's house sometime prior to assault; and (4) sentence was not excessive.

Affirmed.
West Headnotes
**[1] Criminal Law 110 ☞304(16)**

110 Criminal Law
    110XVII Evidence
        110XVII(A) Judicial Notice
            110k304 Judicial Notice
                110k304(16) k. Records. Most Cited Cases

**Criminal Law 110 ☞481**

110 Criminal Law
    110XVII Evidence
        110XVII(R) Opinion Evidence
            110k477 Competency of Experts
                110k481 k. Determination of Question

of Competency. Most Cited Cases

**Criminal Law 110 ☞695.5**

110 Criminal Law
    110XX Trial
        110XX(D) Procedures for Excluding Evidence
            110k695.5 k. Hearing, Ruling, and Objections. Most Cited Cases
    (Formerly 110k6951/2)
Trial court was not required to hold pretrial *Frye* hearing prior to admitting deoxyribonucleic acid (DNA) identification testimony; trial court relied on precedential case law to determine that testimony was admissible, taking judicial notice of DNA identification as accepted scientific procedure based on prior rulings, and trial court made independent findings regarding witness' qualifications as expert in DNA identification as well as reliability of specific procedures used.

**[2] Criminal Law 110 ☞388.2**

110 Criminal Law
    110XVII Evidence
        110XVII(I) Competency in General
            110k388 Experiments and Tests; Scientific and Survey Evidence
                110k388.2 k. Particular Tests or Experiments. Most Cited Cases
Deoxyribonucleic acid (DNA) identification testimony, including statistical probability testimony, is sufficiently accepted in scientific community to be admissible.

**[3] Criminal Law 110 ☞369.1**

110 Criminal Law
    110XVII Evidence
        110XVII(F) Other Offenses
            110k369 Other Offenses as Evidence of Offense Charged in General
                110k369.1 k. In General. Most Cited

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT A

634 N.E.2d 1285                                                              Page 2

262 Ill.App.3d 565, 634 N.E.2d 1285, 199 Ill.Dec. 931
**(Cite as: 262 Ill.App.3d 565, 634 N.E.2d 1285)**

Cases
Evidence of defendant's commission of other crimes
or wrongs is generally inadmissible so that trier of
fact will not draw inference that because defendant
committed one crime, he probably committed others.

**[4] Criminal Law 110 ☞369.2(1)**

110 Criminal Law
    110XVII Evidence
        110XVII(F) Other Offenses
            110k369 Other Offenses as Evidence of
Offense Charged in General
                110k369.2 Evidence Relevant to
Offense, Also Relating to Other Offenses in General
                    110k369.2(1) k. In General. Most
Cited Cases
Evidence of other crimes, wrongs, or acts
committed by defendant is admissible to prove
modus operandi, intent, identity, motive, absence of
mistake, or for any other relevant purpose other
than to show defendant's propensity to commit
crimes.

**[5] Criminal Law 110 ☞369.2(1)**

110 Criminal Law
    110XVII Evidence
        110XVII(F) Other Offenses
            110k369 Other Offenses as Evidence of
Offense Charged in General
                110k369.2 Evidence Relevant to
Offense, Also Relating to Other Offenses in General
                    110k369.2(1) k. In General. Most
Cited Cases
When evidence of other crimes, wrongs, or acts
committed by defendant is offered, trial court must
weigh its relevance against its prejudicial effect;
unfairly prejudicial evidence should not be admitted.

**[6] Criminal Law 110 ☞369.2(1)**

110 Criminal Law
    110XVII Evidence
        110XVII(F) Other Offenses
            110k369 Other Offenses as Evidence of
Offense Charged in General
                110k369.2 Evidence Relevant to
Offense, Also Relating to Other Offenses in General

                110k369.2(1) k. In General. Most
Cited Cases

**Criminal Law 110 ☞1153(1)**

110 Criminal Law
    110XXIV Review
        110XXIV(N) Discretion of Lower Court
            110k1153 Reception and Admissibility of
Evidence; Witnesses
                110k1153(1) k. In General. Most Cited
Cases
Admission of evidence of other crimes, wrongs, or
acts committed by defendant lies within sound
discretion of trial court and Appellate Court will not
reverse on review absent showing of abuse of
discretion.

**[7] Criminal Law 110 ☞369.15**

110 Criminal Law
    110XVII Evidence
        110XVII(F) Other Offenses
            110k369 Other Offenses as Evidence of
Offense Charged in General
                110k369.15 k. Evidence of Other
Offenses to Prove Identity. Most Cited Cases

**Criminal Law 110 ☞372(7)**

110 Criminal Law
    110XVII Evidence
        110XVII(F) Other Offenses
            110k372 Acts Part of Series Showing
System or Habit
                110k372(7) k. Incest, Rape, and Other
Sex Offenses. Most Cited Cases
Trial court could admit, over defendant's undue
prejudice objection, witness' testimony that, some
time prior to aggravated sexual assault, he helped
defendant move outdoor furniture closer to victim's
house and then stood lookout while defendant
looked into windows; central issue was assailant's
identity, given victim's inability to see assailant's
face during assault, testimony clearly linked
defendant to crimes and bolstered state's other
identification testimony, and trial court gave
limiting instruction explaining that testimony should
be construed only for purposes of identity, plan, and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

634 N.E.2d 1285                                                                      Page 3

262 Ill.App.3d 565, 634 N.E.2d 1285, 199 Ill.Dec. 931
(Cite as: 262 Ill.App.3d 565, 634 N.E.2d 1285)

preparation.

**[8] Criminal Law 110 ☜1147**

110 Criminal Law
   110XXIV Review
      110XXIV(N) Discretion of Lower Court
         110k1147 k. In General. Most Cited Cases

**Sentencing and Punishment 350H ☜31**

350H Sentencing and Punishment
   350HI Punishment in General
      350HI(B) Extent of Punishment in General
         350Hk31 k. Discretion of Court. Most
Cited Cases
   (Formerly 110k1208.2)
Trial court's sentence is matter involving
considerable discretion and should not be reversed
on review unless that discretion has been abused.

**[9] Sentencing and Punishment 350H ☜604**

350H Sentencing and Punishment
   350HIII Sentence on Conviction of Different
Charges
      350HIII(B) Consecutive or Cumulative
Sentences
         350HIII(B)3 Factors and Purposes
            350Hk603 Offenses Committed in One
Transaction, Episode, or Course of Conduct
               350Hk604 k. In General. Most
Cited Cases
   (Formerly 110k1210(3))
Consecutive sentences are mandatory for those
offenses occurring as part of same course of
conduct committed by offenders convicted of
aggravated criminal sexual assault. Ill.Rev.St.1989,
ch. 38, ¶ 1005-8-4.

**[10] Sentencing and Punishment 350H ☜599**

350H Sentencing and Punishment
   350HIII Sentence on Conviction of Different
Charges
      350HIII(B) Consecutive or Cumulative
Sentences
         350HIII(B)3 Factors and Purposes
            350Hk599 k. Brutality, Cruelty,
Heinousness. Most Cited Cases
   (Formerly 110k1210(3))

**Sentencing and Punishment 350H ☜601**

350H Sentencing and Punishment
   350HIII Sentence on Conviction of Different
Charges
      350HIII(B) Consecutive or Cumulative
Sentences
         350HIII(B)3 Factors and Purposes
            350Hk601 k. Offender's Criminal
History or Other Misconduct. Most Cited Cases
   (Formerly 110k1210(3))
Sentence of consecutive prison terms of 30 years on
one count of aggravated criminal sexual assault, 10
years on each of four remaining counts of
aggravated sexual assault, and 20 years for home
invasion was not excessive; trial court did not
impose maximum possible sentence, court
specifically stated that it reviewed all mitigating and
aggravating factors, defendant had held several
jobs, but not for any length of time, defendant had
history of trouble with the law, including several
felony convictions, and premeditated, repeated
sexual assaults of 12-year-old girl were shockingly
heinous. Ill.Rev.Stat.1989, ch. 38, ¶¶ 12-11,
12-14(b)(1), (d), 1005-8-1a(3), 1005-8-2a(2),
1005-8-4.

**1286 ***932 *565 Sheldon L. Banks, Chicago
(argued), for appellant.
Lawrence R. Fichter, State's Atty., Decatur, Norbert
J. Goetten, Director, State's Atty. Appellate
Prosecutor, *566 Robert J. Biderman, Deputy
Director, Linda Susan McClain (argued), Staff
Atty., Springfield, for appellee.
Justice STEIGMANN delivered the opinion of the
court:
In March 1993, a jury convicted defendant, William
Johnson, of five counts of aggravated criminal
sexual assault (Ill.Rev.Stat.1989, ch. 38, par.
12-14(b)(1)), and two counts of home invasion (
Ill.Rev.Stat.1989, ch. 38, par. 12-11). The trial
court later vacated the second home invasion
conviction as duplicitous and sentenced defendant
to consecutive prison terms of 30 years on one
count and 10 years on each of the other four counts

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

634 N.E.2d 1285

Page 4

262 Ill.App.3d 565, 634 N.E.2d 1285, 199 Ill.Dec. 931
(Cite as: 262 Ill.App.3d 565, 634 N.E.2d 1285)

of aggravated criminal sexual assault, and a consecutive 20-year term for the home invasion count. Defendant appeals, arguing that the court (1) erroneously admitted DNA testimony linking defendant to these crimes, (2) improperly permitted the State to elicit testimony that defendant staked out the victim's home, and (3) abused its discretion by imposing an excessive sentence.

We affirm.

## I. BACKGROUND

Prior to trial, defendant made several motions *in limine,* including motions to preclude (1) Harold Deadman's expert testimony about DNA (deoxyribonucleic acid) identification, and (2) Maurice Witherspoon's testimony about prior crimes, wrongs, or acts committed with defendant. Regarding defendant's motion *in limine* concerning Deadman's expert testimony, the trial court reserved ruling on the admissibility of the DNA evidence to allow defendant an opportunity to submit authority on the issue. Defendant neither objected to this procedure nor requested a pretrial ruling. The trial **1287 ***933 court subsequently took judicial notice of this court's decision that DNA identification evidence is admissible because it is recognized by the relevant scientific communities. See *People v. Lipscomb* (1991), 215 Ill.App.3d 413, 432, 158 Ill.Dec. 952, 964, 574 N.E.2d 1345, 1357.

Defendant's motion concerning Witherspoon sought to preclude his testimony that he acted as a lookout while defendant looked in the windows of the victim's home. In response, the State informed the trial court that it would not ask Witherspoon to testify about crimes committed with defendant, but would only inquire about defendant's presence at the victim's house and his looking in the windows. The court then denied defendant's motion.

At trial, the victim, a 12-year-old girl, testified that on December 10, 1990, she was awakened during the night by someone putting an object which felt like a gun to her head. The person covered her face *567 with a pillow and proceeded to commit five separate acts of sexual assault upon her. After ejaculating on her leg, the assailant used a stuffed animal to wipe her leg off. Even though she was not able to see the assailant's face, she could see that he was a black man.

Her younger brother was sleeping in her room that night. He was also awakened by someone placing what felt like a gun to his head. He also did not see the assailant because a sheet covered his head during the entire incident. His testimony closely paralleled his sister's. After the assailant fled, the children lay in bed for some time and then told their mother what had happened. The victim was taken to an emergency room, where the medical staff followed standard procedures for a rape case in order to preserve evidence.

A police officer who investigated the scene testified that no latent fingerprints matching defendant's were found at the scene. Further, some hairs found at the scene did not match either the victim or defendant. However, a serology expert testified that defendant's blood type was consistent with the semen stains left on the stuffed animal and the victim's underwear.

Witherspoon testified that he received a reduced charge in exchange for his testimony against defendant. Witherspoon knew defendant because Witherspoon's brother used to be married to defendant's sister. Witherspoon testified that he and defendant had been at the victim's house in the fall of 1990 to "check it out." He explained that he helped defendant move outdoor furniture closer to the house and then stood lookout while defendant looked in the windows. Both the victim and the victim's mother testified that someone had moved their outdoor furniture during the fall of 1990, and they did not know who. An officer testified that Witherspoon had pointed out the victim's house while they drove by it in February 1991.

Defendant denied ever having been present at the victim's home and denied the acts of sexual assault. Defendant also testified that he did not consider Witherspoon a friend. Two friends of defendant testified that they believed defendant was with them at their home on December 10, 1990; they claimed

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

262 Ill.App.3d 565, 634 N.E.2d 1285, 199 Ill.Dec. 931
**(Cite as: 262 Ill.App.3d 565, 634 N.E.2d 1285)**

they would have heard him if he had left the house.

After the trial court took judicial notice of the admissibility of DNA identification evidence, the State offered Deadman, a Federal Bureau of Investigation (FBI) agent, to testify about DNA identification. After Deadman testified about his qualifications, the court found him qualified to testify as an expert on DNA identification. Deadman then explained in detail the FBI procedures used in DNA identification. The trial court ruled that the FBI procedures were not so **\*568** unreliable as to preclude the DNA identification evidence, and Deadman testified that in his opinion, the seminal material from the victim's underwear and the stuffed animal matched samples of bodily fluids taken from defendant. Deadman testified further that the probability of selecting another person from the black population who is unrelated to defendant and who would have the same DNA profile as defendant is one in 100 million.

## II. DNA IDENTIFICATION TESTIMONY

[1] Defendant contends that the trial court erred in admitting the DNA testimony. **\*\*1288 \*\*\*934** Citing *Lipscomb* for the proposition that the trial court's determination of whether to allow DNA identification evidence must be made prior to trial, defendant first argues the trial court erred by failing to conduct such a hearing. However, although the trial court in *Lipscomb* did issue a pretrial ruling based on a *Frye* hearing (see *Frye v. United States* (D.C.Cir.1923), 293 F. 1013), the *Lipscomb* court did not hold that such a hearing must be held in each case.

In *People v. Mehlberg* (1993), 249 Ill.App.3d 499, 188 Ill.Dec. 598, 618 N.E.2d 1168, the defendant argued that the trial court erred by failing to hold a *Frye* hearing regarding the admissibility of DNA identification testimony. The appellate court disagreed and held that the trial court appropriately relied on precedential case law to determine DNA testimony was admissible without holding a *Frye* hearing. *Mehlberg*, 249 Ill.App.3d at 532-38, 188 Ill.Dec. at 620-24, 618 N.E.2d at 1190-94; see also *People v. Thomas* (1990), 137 Ill.2d 500, 518, 148

Ill.Dec. 751, 757, 561 N.E.2d 57, 63 (trial court did not err by failing to hold a *Frye* hearing on admissibility of electrophoresis testimony after taking judicial notice of electrophoresis as an accepted scientific procedure based on the prior decision in *People v. Partee* (1987), 157 Ill.App.3d 231, 110 Ill.Dec. 845, 511 N.E.2d 1165, that such testimony was admissible).

In this case, we hold that the trial court also appropriately relied on precedential case law to determine that the proffered DNA testimony was admissible. The trial court correctly took judicial notice of DNA identification as an accepted scientific procedure based on this court's prior rulings in *Lipscomb*, 215 Ill.App.3d at 432, 158 Ill.Dec. at 964, 574 N.E.2d at 1357, and *People v. Miles* (1991), 217 Ill.App.3d 393, 404-05, 160 Ill.Dec. 347, 354-55, 577 N.E.2d 477, 484-85. (See also *People v. Stanley* (1993), 246 Ill.App.3d 393, 400-01, 186 Ill.Dec. 295, 301, 615 N.E.2d 1352, 1358 (citing *Miles* for the proposition that DNA probability statistics testimony has been accepted in this jurisdiction).) Thus, no need existed for the court to conduct a *Frye* hearing prior to making its decision on the admissibility of this evidence. Further, we note that the trial court did make independent **\*569** findings regarding Deadman's qualifications as an expert in DNA identification, as well as the reliability of the specific procedures the FBI used.

[2] Next, defendant argues that the trial court erred in admitting the DNA identification testimony. In *Lipscomb*, this court determined that DNA identification testimony is admissible, stating:
"[T]he DNA identification or fingerprinting procedure * * * is generally accepted within the particular scientific fields involved and is admissible. This includes the six-step RFLP procedure used in developing the autorads, the visual interpretation of these autorads, the manner of determining the bins, the development of frequencies, and procedure whereby the individual frequencies are multiplied together to determine the ultimate frequency of the pattern.
Any question concerning the specific procedures used by the company or expert goes to the reliability of the evidence and is properly

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

634 N.E.2d 1285                                                    Page 6

262 Ill.App.3d 565, 634 N.E.2d 1285, 199 Ill.Dec. 931
(Cite as: 262 Ill.App.3d 565, 634 N.E.2d 1285)

considered by the jury in determining what weight to give to this evidence. If it is shown that the procedures used give an unreliable result, then the court may find it necessary to exclude this evidence entirely." (*Lipscomb,* 215 Ill.App.3d at 432, 158 Ill.Dec. at 964, 574 N.E.2d at 1357.)

In *Miles,* this court reaffirmed its decision in *Lipscomb,* stating that DNA identification testimony is admissible, including statistical probability testimony. *Miles,* 217 Ill.App.3d at 404-05, 160 Ill.Dec. at 354-55, 577 N.E.2d at 484-85.

Defendant does not argue that the specific procedures used in this case were unreliable, but instead simply contends that DNA identification testimony in general should not be allowed. The only case defendant cites in support of this position is a first district case in which the appellate court found that the trial court had not abused its discretion by precluding a codefendant's DNA tests. (*People v. Wardell* (1992), 230 Ill.App.3d 1093, 1101, 172 Ill.Dec. 478, 483-84, 595 N.E.2d 1148, 1153-54.) However, the court in *Wardell* based its decision on the fact that at the time the codefendant made his request (and **1289 ***935 when the trial court ruled on it), DNA testing had been available in the United States for only five months and no Illinois court had yet allowed such evidence. (*Wardell,* 230 Ill.App.3d at 1101, 172 Ill.Dec. at 483-84, 595 N.E.2d at 1153-54.) The *Wardell* court noted that DNA testing has since been allowed by some Illinois courts, citing *Lipscomb* and *Miles. Wardell,* 230 Ill.App.3d at 1100, 172 Ill.Dec. at 483, 595 N.E.2d at 1153.

In holding that the trial court properly allowed the DNA identification testimony in this case, we are aware of the recent decision of the First District Appellate Court in *People v. Watson* (1994), 257 Ill.App.3d 915, 928, 196 Ill.Dec. 89, 98, 629 N.E.2d 634, 643, questioning the bases *570 of the holdings in *Lipscomb, Miles,* and *Mehlberg* in part because in those cases "there was a complete absence of opposing scientific perspectives challenging the DNA evidence, a factor which, at least in part, led the courts to conclude that the matching procedures were generally accepted." We note that in *Lipscomb,* the trial court conducted

an exhaustive, lengthy pretrial hearing on DNA identification testimony at which the State's proffered evidence was vigorously and thoroughly challenged. With all due respect to the reservations expressed by the *Watson* court, we stand by and reaffirm our holdings in *Lipscomb* and *Miles.* In reaffirming our holdings in those cases, we have considered the recent decision of the Second District Appellate Court in *People v. Stremmel* (1994), 258 Ill.App.3d 93, 101-106, 197 Ill.Dec. 177, 182-86, 630 N.E.2d 1301, 1306-10, where the appellate court reviewed the extensive pretrial hearings the trial court conducted on the admissibility of the DNA evidence, consisting of the testimony of six experts (four for the State and two for the defendant), and, after citing approvingly our holding in *Lipscomb,* ruled that the trial court properly admitted that evidence.

Defendant makes no argument that the particular DNA identification procedures used in this case were unreliable. Consequently, we reject defendant's argument that the trial court erred by allowing the DNA identification testimony.

### III. WITHERSPOON'S TESTIMONY

Defendant next argues that the trial court erred by allowing Witherspoon's testimony that he acted as a lookout on several occasions while defendant looked in the windows of the victim's house before the day when she was sexually assaulted. Defendant argues that the trial court erred in admitting this evidence because of its highly prejudicial nature. The State maintains that the court properly admitted this evidence for the purpose of showing defendant's identification, purpose, and plan.

[3][4][5][6] Evidence of a defendant's commission of other crimes or wrongs is generally inadmissible so that the trier of fact will not draw the inference that because the defendant committed one crime, he probably committed others. (See *People v. Lampkin* (1983), 98 Ill.2d 418, 428-30, 75 Ill.Dec. 260, 265-66, 457 N.E.2d 50, 55-56.) However, evidence of other crimes, wrongs, or acts committed by a defendant is admissible to prove *modus*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

634 N.E.2d 1285                                                                    Page 7

262 Ill.App.3d 565, 634 N.E.2d 1285, 199 Ill.Dec. 931
**(Cite as: 262 Ill.App.3d 565, 634 N.E.2d 1285)**

*operandi,* intent, identity, motive, absence of mistake, or any other relevant purpose other than to show a defendant's propensity to commit crimes. ( *People v. Coleman* (1994), 158 Ill.2d 319, 322, 198 Ill.Dec. 813, 820, 633 N.E.2d 654, 661); *People v. Stewart* (1984), 105 Ill.2d 22, 61-62, 85 Ill.Dec. 241, 260-61, 473 N.E.2d 840, 859-60.) When such evidence is offered, the trial court must weigh its relevance against its prejudicial effect; unfairly prejudicial evidence **\*571** should not be admitted. ( *Stewart,* 105 Ill.2d at 62-63, 85 Ill.Dec. at 261, 473 N.E.2d at 860.) The admission of such evidence lies within the sound discretion of the trial court, and this court will not reverse on review absent a showing of abuse of discretion. *People v. Maxwell* (1992), 148 Ill.2d 116, 130, 170 Ill.Dec. 280, 287, 592 N.E.2d 960, 967; *People v. Harper* (1993), 251 Ill.App.3d 801, 804, 191 Ill.Dec. 185, 187, 623 N.E.2d 775, 777.

[7] The testimony of Witherspoon was not offered for the purpose of showing defendant's general propensity to commit crime, but rather to prove his identity, plan, and preparation. A central issue in this case was the assailant's identity, given the victim's inability to see the assailant's face during the **\*\*1290 \*\*\*936** assault. Witherspoon's testimony clearly linked defendant to these crimes and bolstered the identification testimony offered by the State. The trial court specifically found that this testimony had substantial probative value, and we agree. Further, the fact that this testimony was so compelling in no way makes it unfairly prejudicial. Last, we note that the trial court appropriately gave a limiting instruction to the jury, explaining that this evidence should be considered only for purposes of identity, plan, and preparation. We hold that the trial court did not err in allowing Witherspoon's testimony. See *Maxwell,* 148 Ill.2d at 131-32, 170 Ill.Dec. at 287-88, 592 N.E.2d at 967-68.

## IV. SENTENCING

Defendant further argues that the trial court abused its discretion in sentencing him. As stated earlier, the trial court sentenced defendant to consecutive prison terms of 30 years on one count of aggravated criminal sexual assault, 10 years on the other four counts of that offense, and a 20-year consecutive sentence on the home invasion count. Essentially, defendant's sentence amounts to 90 years in prison. Defendant argues that such a protracted sentence is error because it does not serve any rehabilitative purpose.

As the only authority for his position, defendant cites a statutory provision and cases stating that sentencing should reflect both the seriousness of the crime and the rehabilitative potential of the defendant. (See Ill.Rev.Stat.1989, ch. 38, par. 1001-1-2(a); *People v. Carlson* (1980), 79 Ill.2d 564, 587-91, 38 Ill.Dec. 809, 820-21, 404 N.E.2d 233, 244-45; *People v. Williams* (1978), 62 Ill.App.3d 966, 975-76, 20 Ill.Dec. 200, 208, 379 N.E.2d 1268, 1276.) Although defendant is a young man (27 years old at the time of sentencing), little supports his claim of rehabilitative potential. He has held several jobs, but none for any length of time. In addition, defendant has continuously been in trouble with the law, including having several felony convictions.

[8][9] The trial court's sentence is a matter involving considerable **\*572** judicial discretion and should not be reversed on review unless that discretion has been abused. (*People v. Streit* (1991), 142 Ill.2d 13, 18-19, 153 Ill.Dec. 245, 247, 566 N.E.2d 1351, 1353; *People v. Nussbaum* (1993), 251 Ill.App.3d 779, 780-81, 191 Ill.Dec. 165, 167, 623 N.E.2d 755, 757.) In addition, consecutive sentences are mandatory for those offenses occurring as part of the same course of conduct committed by offenders convicted of aggravated criminal sexual assault. Ill.Rev.Stat.1989, ch. 38, par. 1005-8-4; *People v. Bole* (1993), 155 Ill.2d 188, 195-96, 184 Ill.Dec. 423, 426-27, 613 N.E.2d 740, 743-44; *Miles,* 217 Ill.App.3d at 409-10, 160 Ill.Dec. at 358, 577 N.E.2d at 488; *Lipscomb,* 215 Ill.App.3d at 439, 158 Ill.Dec. at 968, 574 N.E.2d at 1361-62.

[10] The nonextended sentencing range for each count of aggravated criminal sexual assault and for home invasion, both Class X felonies (see Ill.Rev.Stat.1989, ch. 38, pars. 12-14(d), 12-11(c)), is not less than six nor more than 30 years of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

634 N.E.2d 1285

262 Ill.App.3d 565, 634 N.E.2d 1285, 199 Ill.Dec. 931
**(Cite as: 262 Ill.App.3d 565, 634 N.E.2d 1285)**

imprisonment. (Ill.Rev.Stat.1989, ch. 38, par. 1005-8-1(a)(3)).) At defendant's sentencing hearing, the State also argued that defendant was eligible for extended-term sentencing (30 to 60 years of imprisonment (Ill.Rev.Stat.1989, ch. 38, par. 1005-8-2(a)(2))); however, the trial court did not sentence him to extended terms. In fact, the trial court did not even impose the maximum nonextended sentence possible by statute, though it did impose consecutive sentences. In addition, the trial court specifically stated that it reviewed all of those factors which might mitigate the sentence and all of those factors which the court must consider as aggravating factors.

The crimes defendant committed in this case are shockingly heinous-the premeditated, repeated sexual assault of a young girl in her own bed by a stranger who stealthily entered the victim's home at night as she slept. By imposing what amounts to a 90-year sentence, the trial court apparently concluded that the enormity of defendant's crimes requires that he never be released from prison-or at least not released until he is too old to present a danger to society any longer. We agree.

People who commit crimes like this forfeit their right to walk among us as members of a free society. The courts must do all they can to ensure that these terrible crimes-and the **1291 ***937 suffering they caused this innocent victim (perhaps for the rest of her life)-never again be visited upon some other innocent victim. By putting this vicious criminal behind bars for this lengthy period, the trial court fulfilled its obligation to protect society, and we affirm the trial court's sentence.

## V. CONCLUSION

For the reasons stated, we affirm defendant's convictions of *573 aggravated criminal sexual assault and home invasion and the sentences imposed.

Affirmed.

KNECHT and COOK, JJ., concur.
Ill.App. 4 Dist.,1994.

People v. Johnson
262 Ill.App.3d 565, 634 N.E.2d 1285, 199 Ill.Dec. 931

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

E-FILED
Friday, 27 July, 2007  11:58:07 AM
Clerk, U.S. District Court, ILCD

**77668**

No. _____

---

IN THE

SUPREME COURT OF ILLINOIS

---

PEOPLE OF THE STATE OF ILLINOIS,

                              Plaintiff-Respondent,

        -vs-

WILLIAM JOHNSON,

                              Defendant-Petitioner.

---

Amended Petition For Leave To Appeal From The Appellate Court
Of Illinois,
Fourth District, No. 4-93-0558

There Heard on Appeal From The Circuit Court Of
Macon County, Criminal Division
Ind. No. 92-CF-954
The Honorable John K. Greanias, Judge Presiding.

---

PETITION FOR LEAVE TO APPEAL

---

Sheldon L. Banks
Attorney At Law
77 W. Washington
Suite 1100
Chicago, Illinois  60602
Attorney No. 70242

**Counsel For Petitioner**

**FILED**

AUG 2 5 1994

SUPREME COURT CLERK

EXHIBIT B

No. _____

---

## IN THE

## SUPREME COURT OF ILLINOIS

---

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) Amended Petition For Leave |
| | ) To Appeal From The |
| Plaintiff-Respondent, | ) Appellate Court of Illinois, |
| | ) Fourth Dist. No. 4-93-0558 |
| -vs- | ) ----------- |
| | ) There Heard on Appeal From |
| WILLIAM JOHNSON, | ) The Circuit Court of Macon |
| | ) County, Criminal Division |
| Defendant-Petitioner. | ) Ind. No. 92-CF-954 |
| | ) |
| | )       Honorable |
| | )       John K. Greanias, |
| | )       Judge Presiding |

---

### PETITION FOR LEAVE TO APPEAL

TO:  The Honorable Chief Justice and Associate Justices
     Of The Supreme Court Of Illinois

May It Please Your Honors:

I.

### PRAYER FOR LEAVE TO APPEAL

Defendant-Petitioner, William Johnson, respectfully petitions for leave to appeal from the judgment and opinion of the Appellate Court of Illinois, Fourth District.  This case presents the following issue of first impression as the reason for granting defendant's petition for leave to appeal:

    1.  Whether the trial court properly allowed the jury
    to hear testimony about DNA identification procedures
    and methodology.

1

## II.

### OPINION AND PROCEEDINGS BELOW

Following a jury trial before Judge John K. Greanias, William Johnson was convicted of five counts of aggravated criminal sexual assault and two counts of home invasion. He was sentenced to a total of ninety years incarceration. On June 7, 1994, the Appellate Court for the Fourth Judicial District, affirmed the defendant's conviction. An affidavit of intent to file a petition for leave to appeal was filed within twenty-one days of this decision. A petition for rehearing was not filed. This petition for leave to appeal follows within thirty-five days of that Court's order.

## III.

## POINTS RELIED ON FOR REVERSAL

THE TRIAL COURT IMPROPERLY ALLOWED THE JURY TO HEAR
TESTIMONY ABOUT DNA IDENTIFICATION. . . . . . . . . . . .

People v. Watson, ___ Ill.App.3d ___, 629 N.E.2d 634
   (1st Dist. 1994) . . . . . . . . . . . . . . . . . . .

Note, Unreliable Scientific Evidence Meets The Criminal
   Defendant, Stanford Law Review, Vol. 42, (1990). . . . . . . .

People v. Harold, 124 Ill. App.3d 363, 383, 464 N.E.2d 734
   (1st Dist. 1984) . . . . . . . . . . . . . . . . . . .

A.  The Trial Court's Failure To Issue A Pretrial
    Ruling Regarding The Admission Of DNA Identification
    Testimony Was Improper . . . . . . . . . . . . . . .

People v. Lipscomb, 215 Ill. App.3d 413, 574 N.E.2d 1345 (4th
   Dist. 1991) . . . . . . . . . . . . . . . . . . . . .

3.  The Court Erred In Allowing DNA
    Identification Testimony . . . . . . . . . . . . . .

People v. Miles, 217 Ill.App.3d 393, 405, 577 N.E.2d 477,
   (4th Dist. 1991) . . . . . . . . . . . . . . . . . . .

People v. Wardell, 230 Ill.App.3d 1093, 595 N.E.2d 1148
   (1st Dist. 1992) . . . . . . . . . . . . . . . . . . .

Goldberg, A New Day for DNA? ABAJ, April, 1992 at 85-85. . . . .

National Research Counsel, DNA Technology in Forensic Science
   (1992) . . . . . . . . . . . . . . . . . . . . . . . .

Rosenberger, Scientists back DNA tests, but urge more safeguards,
   Chicago Sun-Ties, April 15, 1992, at 26, Col. 1 . . . . . . . .

Kolata, Federal Panel Urges ban on use of DNA "fingerprinting"
   in court, Chicago Law Bulletin, April 14, 1992 at 3, Col. 2 . .

Dark Side of DNA Profiling at p. 466 . . . . . . . . . . . . . .

3

## IV.

### STATEMENT OF FACTS

William Johnson relies on the recitation of facts as outlined in the attached opinion.

V.

**ARGUMENT**

I.

**THE TRIAL COURT IMPROPERLY ALLOWED THE JURY TO HEAR
TESTIMONY ABOUT DNA IDENTIFICATION.**

Forensic experts use DNA profiling to aid in identifying the
perpetration of a crime.  They seek to inculpate the criminal
suspect by matching the pattern created by the suspect's genetic
material with that created by genetic material obtained from
tissue or bodily fluids left behind by the defendant.  Note, The
Dark Side of DNA Profiling:  Unreliable Scientific Evidence Meets
The Criminal Defendant.  Stanford Law Review, Vol. 42, (1990).
Because testimony of statistical probabilities encourage the jury
to disregard traditional analysis of the evidence and focus
unfairly on the numerical conclusions, this evidence is unduly
prejudicial and requires that this case be reversed.  People v.
Harold, 124 Ill. App.3d 363, 383, 464 N.E.2d 734 (1st Dist. 1984)

In affirming defendant's conviction, the appellate court
erroneously relied on People v. Lipscomb, 215 Ill.App.3d 413, 574
N.E.2d 1345 (4th Dist. 1991)  This Court should allow defendant's
petition for leave to appeal to determine whether DNA profiling
is admissible scientific evidence to be offered at trial.

In the recent case of People v. Watson, ___ Ill.App.3d ___,
629 N.E.2d 634 (1st Dist. 1994), the trial judge granted
defendant's motion in limine to exclude the results of the DNA
profiling analysis at trial.  Watson was decided after
defendant's opening brief was filed, but prior to the appellate

5

court issuing its opinion.

On appeal, the <u>Watson</u> court stated, "The probability of a coincidental match is an essential part of the DNA evidence and if there is no consensus as to the accuracy of the FBI's statistical calculation, we decline to accept the State's assertion that the defense objections to that precise calculation go only to its weight." <u>Watson</u>, 629 N.E.2d at 646. The Court further held that there is a "lack of general acceptance among relevant scientists" as to the FBI's methodology for determining its statistics. <u>Watson</u>, 629 N.E.2d at 646. Based on this analysis, the First District Appellate Court remanded <u>Watson</u> to determine whether, in light of recent scientific developments (referred to as the "ceiling principle"), the State's DNA evidence should have been allowed at trial. <u>Watson</u>, 629 N.E.2d at 647-648.

Due to the decision in <u>Watson</u>, as well as the confusion in Illinois regarding DNA statistical evidence, this Court should allow the instant petition for leave to appeal.

A.  The Trial Court's Failure To Issue A Pretrial
    Ruling Regarding The Admission Of DNA Identification
    Testimony Was Improper.

Prior to trial, the defense made a motion in limine to preclude the State from allowing Harold Deadman to testify regarding DNA identification. (R.17)  The Court held that this issue involved two  threshold questions. (R.17)  First, the judge would have to determine whether to allow the evidence at all. (R.17)  If the judge found such evidence to be proper, he would

6

then have to decide whether to qualify Harold Deadman as an expert. (R.17)  The judge reserved ruling until he had time to read the authority presented to him. (R.17)  The judge further ruled that he would not "bar either side from mentioning this in the case because if it doesn't get in [the State does not] have a case anyway." (R.18)  "No", responded the State, "We lose". (R.18)

Although DNA evidence, by the State's own admission, was the main point on which its case would stand or fall, the issue was not discussed again until just prior to the testimony of Harold Deadman. (R.305)  Mr. Deadman was the State's DNA expert. (R.305) He was also the final witness to testify in the State's case-in-chief. (R.305)

From a practical standpoint, this was not the appropriate time to consider this evidence.  Clearly, a judge would not allow a jury to hear two days of testimony and then prevent the State's chief witness from testifying. (R.305)  This evidence should have properly been heard and considered at pretrial hearing.

Illinois authority holds that such evidence should first be considered prior to the commencement of trial.  People v. Lipscomb, 215 Ill. App.3d 413, 574 N.E.2d 1345 (4th Dist. 1991) In Lipscomb, 215 Ill. App.3d 413, defendant requested a pretrial hearing to determine the scientific reliability and the admissibility of the DNA identification process.  DNA fingerprinting is the procedure which determines the likelihood of a sample of blood, tissue, or sperm coming from a certain

7

person.   In <u>Lipscomb</u>, 215 Ill.App.3d 413 (4th Dist. 1991), as

here, the DNA evidence was the primary evidence used to establish

defendant's guilt.  Without such evidence, the State would

certainly have been unable to sustain its burden of proof.

At a detailed pretrial hearing, the <u>Lipscomb</u> court heard

several doctors testify as to their own expertise and as to the

methodology used for DNA testing.  At the conclusion of the

hearing, the court found that each step of the scientific

analysis was scientifically acceptable and reliable.  The Court

also heard the credentials of each witness and qualified these

witnesses as experts prior to trial and again at trial.

<u>Lipscomb</u>, 215 Ill.App.3d 413 (4th Dist. 1991)

The procedure employed by the <u>Lipscomb</u> 215 Ill.App.3d 413

court was that which should have been followed in the instant

case.  The trial court's failure to consider this issue prior to

trial was prejudicial and requires that Mr. Johnson receive a new

trial.

B.   The Court Erred In Allowing DNA
     Identification Testimony.

During voir dire, prospective jurors were asked about their

familiarity with DNA profiling.  The defense asked "[R]egarding

the DNA, some of you have indicated that you have read about it,

is that in any way going to place you in a position of thinking

that one is superior, or it is a proven theory that you couldn't

be fair to the defense about that?" (R.76)  Prospective Juror

Hayslip's response to this question exemplified the problem

inherent in such testimony.  He stated, "I wouldn't be

8

prejudicial.  The conclusion that I had drawn from it is that it is irrefutable".  (R.77)  Although Mr. Hayslip was excused from the jury, his response to this question exemplifies the problem of statistical testimony.  Such testimony encourages jurors to disregard a traditional approach to weighing the evidence and allows them to merely rely on statistical data.  People v. Harold, 124 Ill. App.3d 363, 383.

Although Illinois cases have recently held that the DNA or identification procedure is generally accepted within particular scientific fields and is admissible, (People v. Miles, 217 Ill.App.3d 393, 405, 577 N.E.2d 477, (4th Dist. 1991); People v. Lipscomb, 215 Ill.App.3d 413, 430) those cases are not dispositive of the issue.  The admissibility and reliability of DNA testing continues to be the subject of debate.  People v. Wardell, 230 Ill.App.3d 1093, 595 N.E.2d 1148 (1st Dist. 1992)

The Court in Wardell, 230 Ill.App.3d 1093, discussed a recent article in the American Bar Association Journal in which the author observed that at least four different tests are utilized by as many jurisdictions in determining whether to admit DNA evidence.  The author classifies the tests as follows: (1) the "pure Frye" standard which is used in Illinois; (2) the "Frye plus" standard which adds to the Frye test a requirement that the testing laboratory performed the accepted scientific techniques in its procedures; (3) the relevancy standard of the Federal Rules of Evidence in place of the Frye test; and (4) the "relevancy" plus cases which graft the Frye test and other

9

inquiries into a relevancy standard.  Wardell, 230 Ill.App.3d 1093 citing Goldberg, A New Day for DNA? ABAJ, April, 1992 at 85-85.

Additionally, according to Wardell, 230 Ill.App.3d 1093, a recent federal report, prepared by a panel of scientific and legal experts, stated that DNA fingerprinting procedures are not infallible.  The panel recommended stricter standards to allow for proper testing and interpretation of tests. Wardell citing National Research Counsel, DNA Technology in Forensic Science (1992) Rosenberger, Scientists back DNA tests, but urge more safeguards, Chicago Sun-Ties, April 15, 1992, at 26, Col. 1; Kolata, Federal Panel Urges ban on use of DNA "fingerprinting" in court, Chicago Law Bulletin, April 14, 1992 at 3, Col. 2. Clearly, the scientific and legal community are at odds regarding the effect, reliability and far-reaching implications of such testimony.  According to legal scholars, even when defense attorneys are able to rebut the reliability of such evidence, "the technical challenge by these defense attorneys may be lost on everyone in the courtroom except the scientists who are testifying".  Note, The Dark Side of DNA Profiling Stanford Law Review, Vol. 42 at p. 466.

In the instant case, DNA identification was the primary evidence used to establish Mr. Johnson's guilt, since the complainant was only able to identify hear assailant as a male black.  There was no eyewitness to the crime.  The lengthy, sophisticated, and extremely complicated testimony of Harold

Deadman was crucial to the State's case.  It was Harold Deadman
who responded that the probability of selecting an unrelated
black male at random with DNA profiles matching those of Mr.
Johnson would be "1 in 100 million".  (R.344)  Deadman admitted,
however, that DNA profiling does not allow you to absolutely
identify an individual. (R.378)  It only allows you to use
statistics to determine the "uncommonness of the profile or to
assess what it is". (R.398)  However, without his testimony, the
State would have been unable to sustain a conviction against Mr.
Johnson.

Because DNA testimony is still a subject of both legal and
scientific debate, the evidence should have been prohibited.
This is particularly true in light of the recent First District's
decision in <u>People v. Watson</u>, ___ Ill.App.3d ___, 629 N.E.2d 634
(1994).  Therefore, this Court should allow defendant's petition
for leave to appeal to resolve the confusion which currently
exists in the area of DNA identification testimony.

VI.

CONCLUSION

For the above reasons, defendant respectfully requests that this Court allow his amended petition for leave to appeal.

Respectfully submitted,

Sheldon L. Banks
Attorney At Law
77 W. Washington, Suite 1100
Chicago, Illinois  60602
Attorney No. 70242

Counsel For Petitioner.

12

E-FILED
Friday, 27 July, 2007  11:58:31 AM
Clerk, U.S. District Court, ILCD

# STATE OF ILLINOIS
## SUPREME COURT

At a Term of the Supreme Court, begun and held in Springfield, on Monday, the twelfth day of September, 1994.

#### Present: Michael A. Bilandic, Chief Justice

Justice Benjamin K. Miller       Justice James D. Heiple
Justice Charles E. Freeman       Justice Moses W. Harrison II
Justice Mary Ann G. McMorrow     Justice John L. Nickels

---

On the sixth day of October, 1994, the Supreme Court entered the following judgment:

No. 77668

People State of Illinois,

    Respondent

    v.

William Johnson,

    Petitioner

Petition for Leave
to Appeal from
Appellate Court
Fourth District
4-93-0558
92CF954

The Court having considered the Petition for Leave to Appeal and being fully advised of the premises, the Petition for Leave to Appeal is DENIED.

As Clerk of the Supreme Court of the State of Illinois and keeper of the records, files and Seal thereof, I certify that the foregoing is a true copy of the final order in this case.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed the Seal of said Court, this twenty-eighth day of October, 1994.

*Juleann Hornyak*

    Clerk,
Supreme Court of the State of Illinois

EXHIBIT C

E-FILED
Friday, 27 July, 2007  11:58:56 AM
Clerk, U.S. District Court, ILCD

IN THE

CIRCUIT COURT OF MACOW COUNTY

ILLINOIS CRIMINAL DIVISION

FILED
FEB 19 2009
Kathy A. Holt
Circuit Clerk

PEOPLE OF THE STATE OF ILLINOIS )
                             )
       Respondents, )
                             )
                             )
       -vs- )            No. 92-CF-954
                             )
                             )
WILLIAM JOHNSON               )
                             )
       Petitioner )

COLLATERAL ATTACK UPON A VOID JUDGMENT
PURSUANT TO 735 ILCS 5/2-1401(f)

     NOW COMES, William L. Johnson, Petitioner Pro-se and moves this Honorable
Court to grant relief from a Void 30 year (aggregate) consecutive sentence,
pursuant to S.H.A. 735 ILCS 5/2-1401(f).

     1.  IN support thereof, the petitioner states as follow:IN 1993, petitioner
was tried and convicted of five counts of Aggravated Criminal Sexual Assualt
and one count of home Invasion during trial  (92-cf-954) and received an
aggregate 90 years consecutive sentence (30+20+10+10+10+10=90).

     2.  Petitioner contend that the Judge fail to adhere to statutory requirements
when he imposed an aggregate 90 year consecutive sentence (30+20+10+10+10+10)
for five counts of aggravated criminal sexual assault and home invasion.
(92-cf-954).

     3.  Petitioner contend that 1005-8-4(c)(2) precludes the judge from
imposing an aggregate of consecutive sentences in excess of the sum of the
maximum terms authorized under section 5-8-2, for the 2 most serious felonies
involved.

        5-8-4 (c)(2) for sentences imposed under the law

EXHIBIT D



> in effect on or after February 1, 1978 the aggregate
> of consecutive sentences shall not exceed the sum
> of the maximum terms authorized under section 5-8-
> 2, for the most serious felonies involved.

4. Petitioner contend that the sum of the maximum terms authorized under

section 5-8-2 for the two most serious felonies, is the same as the sum

of the maximum terms authorized under section 5-8-1, for the two most serious

felonies, because 5-8-2, is a combination statute that only authorize the

Judge  to impose the maximum sentence authorized under 5-8-1, unless the

aggravating factors set forth in paragraph (b) of section 5-5-3.2, is found

to be present.

> 5-8-2 ( A) A JUDGE shall not sentence an offender
> to a term of imprisonment in excess of the maximum
> sentence authorized by section 5-8-1 for the class
> of the most serious offense of which the offender
> was convicted unless the factors in aggravation
> set forth in paragraph ( B) of section 5-5-3.2,
> were found to be present.

5. Petitioner contend that since the aggravating factors set forth in

5-5-3.2(b) was not found to be present, the judge was precluded from imposing

a sentence in excess of the maximum sentences authorized under 5-8-1.

> 5-8-1(a) A sentence of imprisonment for a felony
> shall be a determinate sentence set by the court
> under this section, according to the following limitation
> (3) for a Class X felony, the sentence shall be
> not less than 6 years and not more than 30 years...

6. Petitioner contend that the maximum aggregate of consecutive sentences

he could have received for the two most serious felonies (Class X) was 60

years (30 + 30 years consecutive).

7. Where the legislative enactment is clear and unambiguous, a court

is not free to deviate from the plain language and meaning of the statute

by reading into it limitations or conditions that the legislature did not

set forth, nor is it required that the court search for any subtle or not



readily apparent intention of the legislature. People v. Woodard, 175 Ill.
2d at 435, 443, 677 N.E.2d 935 (1997). "Where the language of a statute
is clear and unambiguous, it be given effect without resort to other aids
for construction." People v. Sheehaw, 168 Ill. 2d 298, 659 N.E.2d 1339 (1995).

8.    In imposing sentences, trial court must adhere to statutory requirements.
If a trial court imposes a sentence greater than that permitted by statute,
the excess portion of the sentence is void. See People v. Rankin, 297 Ill. App.
3d 818, 822, 232, Ill. Dec. 316 697 N.E.2d 1246 (1998). Accordingly, the
extended term portion of a criminal sentence is subject to challenge and
cannot stand where the requirements of the extended term sentencing statute
have not been met. See People v. Pittman, 316 Ill. App. 3d 245, 253, 249
Ill. Dec. 468, 736 N.E.2d 662 (2001), and People v. Harvey, 257 Ill. Dec.
98, 753 N.E.2d 293 (2001). Defendant contends that this is such a case,
and in such a case relief from judgment can be sought beyond the usual two
year limitation period (2-1401(f))!

9.    Petitioner contend that section 2-1401(f) of the code makes clear
that "nothing contained in this section affects any existing right to relief
from a void order or judgment, or to employ any existing method to procure
that relief." Harvey.

10.    A void judgment is one that was entered without jurisdiction of
the parties or subject matter and such a judgment may be attached at any
time, either directly or collaterally. People v. Wade, 116 Ill. 2d 1, 5
107 Ill. Dec. 63, 506 N.E.2d 954 (1987). Nither the two year time limitation
nor the due diligence requirment of section 2-1401 apply to a petition challenging
a judgment as void. R.W. Sewant v. Allied Programs Corp. 11 Ill. 2d 304,
309, 95 Ill. Dec. 495, 489 N.E.2d 1360 (1986).

WHEREFORE, Petitioner pray that this Honorable Court will consider the
above stated claim and grant relief from a viod consecutive 15 year sentence.

E-FILED
Friday, 27 July, 2007 11:59:25 AM
Clerk, U.S. District Court, ILCD

FILED

IN THE CIRCUIT COURT FOR THE SIXTH JUDICIAL CIRCUIT OF ILLINOIS

MACON COUNTY, ILLINOIS    2004 MAY 11  P 2 58

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | KATHY A. HOTT |
| | ) | CIRCUIT CLERK |
| Plaintiff-Resondent, | ) | |
| | ) | |
| -vs- | ) | NO. 92-CF-954 |
| | ) | |
| WILLIAM JOHNSON | ) | |
| | ) | |
| Defendant-Petitioner. | ) | |

<u>MOTION TO DISMISS COLLATERAL ATTACK</u>
<u>UPON A VOID JUDGMENT PURSUANT TO 735 ILCS 5/2-1401(f)</u>

Now Come the People of the State of Illinois, by Scott A. Rueter, State's Attorney of Macon County, Illinois and move this Court to dismiss the Petitioner's Section 2-1401 Petition, and, in support of said motion, state as follows:

1. That on June 3, 1993, the Honorable Judge John K. Greanias sentenced the defendant to the Illinois Department of Corrections to consecutive prison terms of 30 years, on Count I, Aggravated Criminal Sexual Assault and 10 years on each of the other four counts of Aggravated Criminal Sexual Assault, Counts II-V, and a consecutive prison term of 20 years on Count VII, Home Invasion. The defendant received an aggregate prison sentence of 90 consecutive years.

2. That the Petitioner's convictions and sentences were affirmed on direct appeal by the Fourth District Appellate Court in an opinion, <u>People v. Johnson</u>, 262 ILL. App. 3rd 565, 634 N.E. 2d 1285 (4th Dist. 1994), <u>appeal denied</u>, 157 ILL. 2d 512, 642 N.E. 2d 1293 (1994).

EXHIBIT E

3.  That the Petitioner, convicted of all Class X felonies, contends that his 90-year prison sentence violated Illinois Revised Statutes 1989, ch. 38, par. 1005-8-4(c)(2), now 730 ILCS 5/5-8-4(c)(2), because the maximum aggregate of consecutive sentences he could have received for the two most serious felonies, both Class X, was 60 years.

4.  That the Illinois Supreme Court, in People v. Tucker, 657 N.E. 2d 1009, 167 ILL. 2d 431 (1995), noted that application of 730 ILCS 5/5-8-4(c)(2) results in a maximum extended term of 60 years for a single Class X felony, by the implementation of 730 ILCS 5/5-8-2(a)(2).  Thus, a defendant convicted of a number of Class X felonies may be sentenced to aggregate consecutive terms of imprisonment not to exceed a total of 120 years. Tucker, 657 N.E. 2d at 1012.

5.  That the Petitioner additionally contends that since the trial court did not make a determination that a factor in aggravation set forth in Illinois Revised Statutes 1989, Ch. 38, par. 1005-5-3.2(b) now 730 ILCS 5/5-5-3.2(b), was applicable, the maximum sentence for a Class X felony under Illinois Revised Statutes 1989, Ch. 38, par. 1005-8-2(a), now 730 ILCS 5/5-8-2(a), was 30 years per Illinois Revised Statutes 1989, ch. 38, par. 1005-8-1(a)(3), now 730 ILCS 5/5-8-1(a)(3).

6.  That all of the Petioner's contentions and calculations were rejected in People v. Woods, 131 ILL. App. 3d 51, 475 N.E. 2d 589 (1st Dist. 1985); People v. Beck, 190 ILL. App. 3d 748, 546 N.E. 2d 1127 (5th Dist. 1989); People v. Myrieckes, 315 ILL. App. 3d 478, 734 N.E. 2d 188 (3rd Dist. 2000).

C32

7.   That the Fourth District Appellate Court rejected the Petitioner's contentions and calculations in the attached Rule 23 Orders filed April 19, 2004, in <u>People v. Lofton</u>, No. 4-00-0963 and <u>People v. Holmes</u>, 4-00-0962.  In <u>Lofton</u> and <u>Holmes</u>, the court concluded that the total aggregate of consecutive sentences for the two most serious felonies, both Class X, was 120 years.

8.  That the court also concluded that the defendants were in error when they posited that since they were not eligible for an extended-term sentence, the extended-term sentences authorized by 730 ILCS 5/5-8-2(a) could not be used in calculating the aggregate of consecutive sentences allowed by 730 ILCS 5/5-8-4(c)(2).  The court held that the trial court correctly relied on that portion of the extended-term statute, 730 ILCS 5/5-8-2(a)(2), only to determine the maximum aggregate consecutive sentences to impose on 2 Class X felony convictions.  Since the trial court sentenced the defendants pursuant to the prison terms specified in 730 ILCS 5/5-8-1 and did not impose any extended-term sentences, the trial court did not have to consider any aggravating factors.

9.  That since the Petitioner's aggregate prison sentence of 90 consecutive years was not void as alleged, the Section 2-1401 Petition was untimely filed, because the Petition must be filed not later than 2 years after the entry of the order or judgment from which relief is sought, except in certain circumstances not applicable to this case. 735 ILCS 5/2-1401(c).  The Petitioner's aggregate prison sentence of 90 consecutive years was imposed on June 3, 1993.  He filed his Section 2-1401 Petition with the Circuit Clerk on February 19, 2004.

Wherefore, the People pray that this Court grant the People's Motion to Dismiss Collateral Attack upon a Void Judgement Pursuant to 735 ILCS 5/2-1401(f).

Respectfully Submitted,
THE PEOPLE OF THE STATE OF ILLINOIS

By: _Richard A. Current_

Richard A. Current,
Assistant State's Attorney of
Macon County, Illinois

## CERTIFICATE OF SERVICE

I, <u>Richard A. Current</u>, Assistant State's Attorney of Macon County, Illinois, certify that I have given notice of the above Motion to Dismiss Collateral Attack upon a Void Judgement Pursuant to 735 ILCS 5/2-1401(f) to William Johnson at their last known address by causing the same to be deposited in the U.S. Mail in an envelope bearing adequate postage and addressed to William Johnson as set forth herein.

DATE: MAY 11, 2004

_Richard A. Current_
Assistant State's Attorney

William Johnson B23496
Menard Correctional Center
711 Kaskaskia Street
P.O. Box 711
Menard, Illinois 62259

C35

**E-FILED**
Friday, 27 July, 2007  11:59:51 AM
Clerk, U.S. District Court, ILCD

```
1992CF000954D 001
PEOPLE
VS.
JOHNSON, WILLIAM L                          PUBLIC DEFENDER
----------------------------------------------------------------------
  ENTERED  JDG CR  TEXT                                  CHANGED  USER
----------------------------------------------------------------------
3/22/2001 JKG      **Complaint filed on 11/17/1992.
                   -------------------------------------------------
                   Motion for Blood Specimen is set for hearing on April 3, 2001
                   at 9:00 a.m. in courtroom 3A.
                   -------------------------------------------------
3/22/2001          Motion for Blood Specimen on file on this date.  nt
                   -------------------------------------------------
                   Notice of Hearing on file as of this date.  nt
                   -------------------------------------------------

4/03/2001 JKG GKJ  Assistant State's Attorney Richard Current present.  Public Defender,
                   Jon Baxter present.  Defendant not present. Copy of Attorney Baxter's
                   March 26, 2001 letter to Defendant with proof of express mailing
                   filed this day.  Case called for hearing on Motion for Blood
                   Specimen.  Motion for Blood Specimen is allowed.  Written Order
                   entered and filed this day.  CIRCUIT CLERK DIRECTED to transmit
                   a true copy to Roger B. Cowan, Warden of the Menard Correctional
                   Center.
                   -------------------------------------------------

4/10/2001          Certificate of Mailing filed. (cc)
                   -------------------------------------------------

4/16/2001          Return Receipt with Service on 04/12/01 from the WARDEN of
                   MENARD CORRECTIONAL CENTER filed.  (cc)
                   -------------------------------------------------

7/31/2003          Correspondence from Appellate Court filed this date.(cc)
                   -------------------------------------------------

2/19/2004          Collateral Attack Upon a Void Judgement on file this date
                   -------------------------------------------------
                   Motion for appointment of Counsel on file this date    cc
                   -------------------------------------------------

2/23/2004 TEP      Collateral Attack Upon a Void Judgment examined.
                   Finding that the maximum sentence allowed under 730 ILCS
                   5/5-8-4(c)(2) is the sum of the maximum allowable sentences
                   under 5/5-8-2 which sets forth the maximum extended term
                   sentences for each class of offense.  The clear meaning of the
                   statute and as interpreted by the Illinois Supreme Court
                   (PEOPLE V. TUCKER, 167 Ill.2d 431) is the sum of maximum
                   extended term for the two most serious offenses.  The maximum
                   vn this case would be 120 years.  Attach denied.
                   -------------------------------------------------
                   Certificate of Mailing filed.
                   -------------------------------------------------

3/22/2004          Motion By Defendant for Reconsideration on file this date    cc
                   -------------------------------------------------

4/13/2004 TEP      Motion for Reconsideration examined.  Finding that Defendant is
                   correct in that the court should not have dismissed his 2-1401
                   Petition.  Further finding that although this Petition is related
                   to a criminal proceeding, it is a civil proceeding, and Defendant
                   is not entitled to appointed counsel.  The Court does have
                   discretion to appoint counsel, which it exercises by denying the
                   request for appointment of counsel.  Petition reinstated and cause
                   allotted for status and for State to file responsive pleading if
                   it desires May 6, 2004, 8:30 a.m., Courtroom 3B.
                   -------------------------------------------------
4/13/2004          Certificate of Mailing filed.
                   -------------------------------------------------

4/21/2004          Certificate of Mailing filed.
                   -------------------------------------------------
```

EXHIBIT F



```
1992CF000954D 001
PEOPLE
VS.
JOHNSON, WILLIAM L                              PUBLIC DEFENDER
------------------------------------------------------------------------
 ENTERED   JDG CR  TEXT                                    CHANGED  USER
------------------------------------------------------------------------

 5/06/2004 TEP JLG People present by Mr. Current.  On motion of Mr. Current, further
                   continuance granted to file a responsive pleading.
                   Status hearing set for 05/13/2004 at 08:30 in courtroom 3B.
                   -------------------------------------------------------

 5/11/2004         Motion to Dismiss Collateral Attack Upon a Void Judgment Pursuant to
                   735 5/2-1401(f) on file.cc
                   -------------------------------------------------------

 5/13/2004 TEP LKM People present by Mr. Bradley.  Cause continued for further status.
                   Status hearing set for 06/21/2004 at 01:30 in courtroom 3B.
                   Defendant granted leave to file a response on or before 6/15/2004.
                   -------------------------------------------------------
 5/13/2004         Certificate of Mailing filed. (cc)
                   -------------------------------------------------------

 6/15/2004         Petition for Writ of Habeas Corpus Ad testificandum with Proof of
                   Service on file this date   cc
                   -------------------------------------------------------
                   Motion In Response by Defendant to Respondent Motion to Dismiss
                   Collateral Attack Upon Void Judgement on file this date   cc
                   -------------------------------------------------------

 6/21/2004 TEP JLG People present by Mr. Current.  No objection by Mr. Current to
                   Defendant's request to strike Paragraphs 7 and 8 of the State's
                   Motion to Dismiss.  Paragraphs 7 and 8 of the Motion to Dismiss
                   are stricken.  The Court will take the matter under advisement
                   on the pleadings.  The Court also DENIES the Defendant's Petition
                   for Writ of Habeas Corpus ad Testificandum.  The Court will rule
                   by 7/28/04.
                   -------------------------------------------------------

 6/22/2004 TEP     Cause removed from advisement.  The Court finds that the aggregate
                   sentence imposed is less than the maximum allowable sentence of
                   120 years.  (PEOPLE V. TUCKER)  Motion to Dismiss allowed.
                   -------------------------------------------------------
                   Certificate of Mailing filed.
                   -------------------------------------------------------

 7/09/2004         Notice of Appeal with Certificate of Service on file. cc
                   -------------------------------------------------------

 7/19/2004 TEP     Request for Appointment of Counsel on Appeal denied.
                   -------------------------------------------------------
                   Certificate of Mailing filed.
                   -------------------------------------------------------

 8/17/2004         Correspondence from Appellate Court filed this date.(cc)
                   -------------------------------------------------------

 8/20/2004         Correspondence from Appellate Public Defender on file this date. (cc)
                   -------------------------------------------------------

 8/25/2004         Correspondence from Appellate Court in re:  to docketing order
                   on file. (cc)
                   -------------------------------------------------------

 9/10/2004 TEP LKM Transcript of Proceedings - Circuit Judge Theodore E. Paine -
                   May 13, 2004 - with Duplicate thereof FILED this date.
                   -------------------------------------------------------

 9/20/2004         Circuit Clerk's Ceritificate of Mailing in re:  Appeal (Common Law
                   Record and Report of Proceedings) to Darryl Pratscher and Defendant
                   on file this date. (cc)
                   -------------------------------------------------------
```

1992CF000954D 001
PEOPLE
VS.
JOHNSON, WILLIAM L                              PUBLIC DEFENDER
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
 ENTERED    JDG CR  TEXT                                           CHANGED   USER
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                    Certificate of Mailing filed. (cc)
                    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
 9/22/2004          Certified Returned Receipts filed.   (cc)
                    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                    Correspondence from Appellate Court filed this date.(cc)
                    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
 9/30/2004          REPORT OF PROCEEDINGS, original and one copy, of the hearings held
                    5/6/04 and 62104 on file for appeal purposes.
                    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
10/08/2004          Certificate of Mailing filed. (cc)
                    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
 3/22/2006          Correspondence from Appellate Court filed this date.(cc)
                    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**E-FILED**

Friday, 27 July, 2007 2:00:36 PM

Clerk, U.S. District Court, ILCD

FILED

AUG 1 - 2006

CLERK OF THE
APPELLATE COURT, 4TH DIST.

NO. 4-04-0709

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| | ) | Macon County |
| v. | ) | No. 92CF954 |
| WILLIAM JOHNSON, | ) | |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Theodore E. Paine, |
| | ) | Judge Presiding. |

---

ORDER

In March 1993, a jury convicted defendant, William Johnson, of five counts of aggravated criminal sexual assault (a Class X felony) and two counts of home invasion (a Class X felony) (Ill. Rev. Stat. 1989, ch. 38, pars. 12-14(b)(1), 12-11). In June 1993, the trial court sentenced defendant to 30 years in prison for one count of aggravated criminal sexual assault, 10 years for each of the other four counts of aggravated criminal sexual assault, and 20 years in prison for one count of home invasion, with those sentences to be served consecutively. (The court did not enter judgment on the second home-invasion conviction, having determined that it merged into defendant's other home-invasion conviction.)

In February 2004, defendant pro se filed a petition under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2004)), alleging that his 90-year aggregate sentence is void because the aggregate of consecutive sentences in his case cannot exceed 60 years (the sum of the maximum

EXHIBIT G

nonextended terms authorized under section 5-8-1 of the Unified
Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, par. 1005-8-1
(now 730 ILCS 5/5-8-1 (West 2004))). Following a June 2004
hearing, the trial court granted the State's motion to dismiss
defendant's petition.

Defendant appeals, arguing that the trial court erred
by dismissing his section 2-1401 petition because his 90-year
aggregate sentence is void. Specifically, he contends that his
sentence violates section 5-8-4(c)(2) of the Unified Code (Ill.
Rev. Stat. 1989, ch. 38, par. 1005-8-4(c)(2) (now 730 ILCS 5/5-8-
4(c)(2) (West 2004))) because the term exceeds the sum of the
maximum term authorized for the two most serious felonies under
section 5-8-2 (Ill. Rev. Stat. 1989, ch. 38, par. 1005-8-2 (now
730 ILCS 5/5-8-2 (West 2004))). Defendant reasons that because
the trial court did not find that he was eligible for an
extended-term sentence, the maximum term for which he is eligible
is 60 years (the sum of two nonextended 30-year terms for a Class
X felony) under section 5-8-1(a)(3) of the Unified Code (Ill.
Rev. Stat. 1989, ch. 38, par. 1005-8-1(a)(3) (now 730 ILCS 5/5-8-
1(a)(3) (West 2004))). We disagree.

At the time of defendant's offenses, section 5-8-
4(c)(2) of the Unified Code provided, in pertinent part, that the
"aggregate of consecutive sentences shall not exceed the sum of
the maximum terms authorized under [s]ection 5-8-2 for the [two]
most serious felonies involved." Ill. Rev. Stat. 1989, ch. 38,
par. 1005-8-4(c)(2) (now 730 ILCS 5/5-8-4(c)(2) (West 2004)). In

- 2 -

turn, section 5-8-2 provided, in pertinent part, as follows:

"(a)  A judge shall not sentence an
offender to a term of imprisonment in excess
of the maximum sentence authorized by
[s]ection 5-8-1 for the class of the most
serious offense of which the offender was
convicted unless the factors in aggravation
set forth in paragraph (b) of [s]ection 5-5-
3.2 were found to be present.  Where the
judge finds that such factors were present,
he may sentence an offender to the following:

         ***

    (2) for a Class X felony, a term shall
be not less than 30 years and not more than
60 years."  Ill. Rev. Stat. 1989, ch. 38,
par. 1005-8-2 (now 730 ILCS 5/5-8-2 (West
2004)).

In People v. Myrieckes, 315 Ill. App. 3d 478, 482, 734
N.E.2d 188, 192 (2000), the Third District rejected the same
argument defendant now makes--namely, that because he was not
eligible for an extended-term sentence, the sum of the maximum
terms authorized for the two most serious felonies (Class X
felonies) was 60 years (the sum of two nonextended 30-year terms
under section 5-8-1).  The Myrieckes court held that section 5-8-
4(c)(2) of the Unified Code (Ill. Rev. Stat. 1989, ch. 38, par.
1005-8-4(c)(2) (now 730 ILCS 5/5-8-4(c)(2) (West 2004))) refers

- 3 -

to the aggregate of the maximum extended terms authorized for the two most serious felonies involved, regardless of whether the particular defendant was eligible for an extended-term sentence. In so holding, the court reasoned that the "plain language of section 5-8-4(c)(2) refers to the 'maximum terms <u>authorized</u>' by section 5-8-2, not to the maximum terms for which a particular defendant is eligible." (Emphasis in original.) <u>Myrieckes</u>, 315 Ill. App. 3d at 482, 734 N.E.2d at 192; see also <u>People v. Beck</u>, 190 Ill. App. 3d 748, 763-64, 546 N.E.2d 1127, 1137 (1989) (in which the Fifth District held that sentencing courts should use the extended-term sentences authorized by section 5-8-2 to compute the aggregate of the consecutive sentences allowed by section 5-8-4(c)(2) even if the particular defendant is not eligible to be sentenced to an extended term; noting that "the extended-term statute serves the purpose of a measuring statute for the consecutive[-]sentence statute"); <u>People v. Woods</u>, 131 Ill. App. 3d 51, 54-55, 475 N.E.2d 589, 592 (1985) (in which the First District reached the same conclusion).

We agree with <u>Myrieckes</u>, <u>Beck</u>, and <u>Woods</u>. We thus hold that under section 5-8-4(c)(2) of the Unified Code (Ill. Rev. Stat. 1989, ch. 38, par. 1005-8-4(c)(2) (now 730 ILCS 5/5-8-4(c)(2) (West 2004))), the aggregate of consecutive sentences shall not exceed the sum of the maximum <u>extended</u> terms authorized for the two most serious felonies involved, regardless of whether the particular defendant was eligible for an extended-term sentence.

- 4 -

In support of our holding, we note that in <u>People v.</u>
<u>Tucker</u>, 167 Ill. 2d 431, 437, 657 N.E.2d 1009, 1012 (1995), the
supreme court--albeit in <u>dicta</u>--interpreted section 5-8-4(c)(2)
of the Unified Code consistently with the above-discussed inter-
pretations by the First, Third, and Fifth Districts.  In <u>Tucker</u>,
the supreme court stated, in pertinent part, as follows:

> "We note that section 5-8-4(c)(2) refers to
> the aggregate of the maximum <u>extended</u> terms
> authorized for the two most serious felonies
> involved.  [Citation.]  For example, where a
> defendant is convicted of a Class X felony,
> the maximum extended[-]term is 60 years.
> [Citation.]  Thus, a defendant convicted of a
> number of Class X felonies may be sentenced
> to consecutive terms of imprisonment not to
> exceed a total of 120 years."  (Emphasis in
> original.)  <u>Tucker</u>, 167 Ill. 2d at 437, 657
> N.E.2d at 1012.

In this case, defendant was convicted of several Class
X felonies.  Thus, the maximum aggregate of consecutive sentences
was 120 years (the sum of two extended 60-year terms for a Class
X felony).  Defendant's 90-year aggregate sentence is well within
that range.  Accordingly, we conclude that defendant's 90-year
aggregate sentence is not void and the trial court did not err by
dismissing defendant's section 2-1401 petition.

In so concluding, we reject defendant's assertion that

- 5 -

the supreme court's decisions in <u>People v. Palmer</u>, 148 Ill. 2d 70, 592 N.E.2d 940 (1992), and <u>People v. Pastewski</u>, 164 Ill. 2d 189, 647 N.E.2d 278 (1995), require a different result.  In <u>Palmer</u>, the supreme court addressed the permissible maximum sentence for an insanity acquittee, pursuant to section 5-2-4(b) of the Unified Code (Ill. Rev. Stat. 1989, ch. 38, par. 1005-2-4(b) (now 730 ILCS 5/5-2-4(b) (West 2004))).  The <u>Palmer</u> court stated that "to commit an insanity acquittee by reference to the extended-term statute, *** the trial court must first find that the insanity acquittee's offense comes within the statutory requirements for application of section 5-8-2(a)." <u>Palmer</u>, 148 Ill. 2d at 86-87, 592 N.E.2d at 947.  That is, the trial court must find the existence of one or more of the aggravating factors set forth in section 5-5-3.2(b).  <u>Palmer</u>, 148 Ill. 2d at 86-87, 592 N.E.2d at 947.  The <u>Palmer</u> court also held that the wanton-cruelty provision of the extended-term statute (Ill. Rev. Stat. 1989, ch. 38, par. 1005-5-3.2(b)(2) (now 730 ILCS 5/5-5-3.2(b)(2) (West 2004))) is not an available means of determining the maximum period of commitment for an insanity acquittee.  <u>Palmer</u>, 148 Ill. 2d at 92, 592 N.E.2d at 950.  In <u>Pastewski</u>, the supreme court again addressed the permissible maximum sentence for an insanity acquittee and concluded that the trial court properly utilized section 5-5-3.2(b) in setting the acquittee's commit-ment, where the acquittee, by reason of a prior conviction, would have qualified for an extended-term sentence had he been found guilty.  <u>Pastewski</u>, 164 Ill. 2d at 196, 647 N.E.2d at 282.

- 6 -

Palmer and Pastewski are inapposite. Unlike in those cases, this case did not involve the permissible maximum sentence for an insanity acquittee under section 5-2-4(b) and the applicability thereto of sections 5-8-2 and 5-5-3.2(b).

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

STEIGMANN, J., with KNECHT, J., concurring.

COOK, J., dissenting.

- 7 -

JUSTICE COOK, dissenting:

I respectfully dissent and would limit defendant's sentence to 60 years.

Section 5-8-4(c)(2) is designed to impose a limit on the sentences that may be imposed under our confusing consecutive-sentencing statutes:  the aggregate of consecutive sentences "shall not exceed the sum of the maximum terms authorized under [s]ection 5-8-2 [providing for extended-term sentences] for the 2 most serious felonies involved."  730 ILCS 5/5-8-4(c)(2) (West 2004).

The question presented is whether the phrase "the maximum terms authorized" refers to the general extended-sentencing range for the relevant class of felony or to the specific sentencing range applicable to the defendant based on the facts of the case.  Myrieckes, 315 Ill. App. 3d at 482, 734 N.E.2d at 192.  Myrieckes took the first approach, stressing the fact that section 5-8-4(c)(2) referred to the "maximum terms authorized."  (Emphasis in original.)  Myrieckes, 315 Ill. App. 3d at 482, 734 N.E.2d at 192.  The language that follows, however, seems to refute that approach.  The consecutive sentences shall not exceed the sum of the "maximum terms authorized under [s]ection 5-8-2 for the 2 most serious felonies involved."  (Emphasis added.)  730 ILCS 5/5-8-4(c)(2) (West 2004).  Section 5-8-2 did not authorize extended-term sentences for the felonies involved here.

The idea that the specific felonies must be examined is reinforced by other language in section 5-8-4(c)(2).  The two-

- 8 -

A-8

felony limitation does not even apply where the offenses were not committed as part of a single course of conduct.  730 ILCS 5/5-8-4(c)(2) (West 2004).  Before the two-felony limitation is applied, the facts of the specific case must be examined to determine whether the offenses "were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective."  730 ILCS 5/5-8-4(c)(2) (West 2004).  It is impossible to determine the sentence limitation of section 5-8-4(c)(2) without considering the specific offenses before the court.

    As the majority points out, <u>Palmer</u> and <u>Pastewski</u> involved a different issue, the permissible maximum sentence for an insanity acquittee.  They did involve a similar analysis, however, and represent the supreme court's closest and most recent thinking on the matter.  If the language of a statute is ambiguous, we may look to tools of interpretation--such as the doctrine of <u>pari</u> <u>materia</u>--to ascertain the meaning of a provision.  <u>People v. Taylor</u>, No. 99756, slip op. at 4 (May 18, 2006), ___ Ill. 2d ___, ___, ___ N.E.2d ___, ___.  The supreme court's decision in <u>Tucker</u> is consistent with the approach that the specific sentencing range for the defendant is the one on which the limitation must be based.  The defendant in <u>Tucker</u> was subject to extended-term sentences.  <u>Tucker</u>, 167 Ill. 2d at 433, 657 N.E.2d at 1010.

    The question whether sentences are consecutive is one of the most important questions in sentencing.  A defendant is

- 9 -

entitled to know with some certainty the rules that determine his sentence.  Criminal or penal statutes are to "'be strictly construed in favor of the accused, and nothing should be taken by intendment or implication beyond the obvious or literal meaning of the statute.'"  <u>Taylor</u>, slip op. at 4, ___ Ill. 2d at ___, ___ N.E.2d at ___, quoting <u>People v. Laubscher</u>, 183 Ill. 2d 330, 337, 701 N.E.2d 489, 492 (1998).  We should not simply assume that the limit on defendant's sentence is 120 years rather than 60 years.

5

- 10 -

NO.

IN THE

SUPREME COURT OF ILLINOIS

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) ) | Appeal from the Appellate Court of Illinois, Fourth Judicial District, No. 4-04-0709. |
| Respondent-Appellee, | ) ) | |
| vs. | ) ) ) ) ) | There on appeal from the Circuit Court of the Sixth Judicial Circuit, Macon County, Illinois, No. 92-CF-954. |
| WILLIAM JOHNSON, | ) ) | |
| Petitioner-Appellant. | ) ) ) ) | Honorable Theodore E. Paine, Judge Presiding. |

## PETITION FOR LEAVE TO APPEAL

DANIEL D. YUHAS
Deputy Defender
Office of the State Appellate Defender
Fourth Judicial District
400 West Monroe Street, Suite 303
P.O. Box 5240
Springfield, IL 62705-5240
(217) 782-3654

CATHERINE K. HART
Assistant Defender

COUNSEL FOR PETITIONER-APPELLANT

EXHIBIT H

**ORAL ARGUMENT REQUESTED**

NO.

IN THE

SUPREME COURT OF ILLINOIS

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS,<br><br>     Respondent-Appellee,<br><br><br>vs.<br><br><br>WILLIAM JOHNSON,<br><br>     Petitioner-Appellant. | ) Appeal from the<br>) Appellate Court of Illinois,<br>) Fourth Judicial District,<br>) No. 4-04-0709.<br>)<br>) There on appeal from the<br>) Circuit Court of the<br>) Sixth Judicial Circuit,<br>) Macon County, Illinois,<br>) No. 92-CF-954.<br>)<br>) Honorable<br>) Theodore E. Paine,<br>) Judge Presiding. |

## PETITION FOR LEAVE TO APPEAL

To the Honorable Justices of the Supreme Court of the State of Illinois:

May It Please The Court:

### I.

### PRAYER FOR LEAVE TO APPEAL

William Johnson, petitioner-appellant, hereby petitions this Court for leave to appeal, pursuant to Supreme Court Rules 315 and 612, from the judgment of the Appellate Court, Fourth Judicial District, affirming the trial court's dismissal of his 2-1401 petition.

## II.

## PROCEEDINGS BELOW

The appellate court affirmed the trial court's dismissal of William Johnson's 2-1401 petition on August 1, 2006. A copy of the appellate court's judgment is appended to this petition.

## III.

## REASON FOR GRANTING REVIEW

William Johnson was given consecutive sentences totaling 90 years, though he was not found extended term eligible. The maximum authorized non-extended term sentence is 30 years; therefore, William Johnson's combined consecutive sentence cannot exceed 60 years. This Court should grant review because, as Justice Cook stated in dissent in this case, "a defendant is entitled to know with some certainty the rules that determine his sentence. Criminal or penal statutes are to be strictly construed in favor of the accused, and nothing should be taken by intendment or implication beyond the obvious or literal meaning of the statute. We should not simply assume that the limit on defendant's sentence is 120 years rather than 60 years." *People v. William Johnson*, Appendix at A10-A11 (citations omitted).

**IV.**

**STATEMENT OF FACTS**

On March 25, 1993, William Johnson was found guilty of five counts of aggravated criminal sexual assault and three counts of home invasion. (Vol. I, C. 138-145) On June 3, 1993, Mr. Johnson was sentenced to the following sentences for his aggravated criminal sexual assault convictions: Count I, 30 years; Count II, 10 years; Count III, 10 years; Count IV, 10 years; Count V, 10 years; and for home invasion, Count VII, 20 years. (Vol. VI, R. 36; Vol. I, C. 208) On direct appeal, the appellate court affirmed the trial court. (Vol. II, C. 2-3); *See People v. William Johnson*, 262 Ill.App.3d 565, 634 N.E.2d 1285 (4th Dist. 1994)

On February 19, 2004, William Johnson filed a 2-1401 petition, pursuant to 735 ILCS 5/2-1401(f). The only issue Mr. Johnson raised in his petition was that the trial court failed to adhere to the statutory requirements when it imposed an aggregate 90 year sentence (six consecutive sentences of 30+20+10+10+10+10) in excess of the aggregate maximum of the two most serious felonies with non-extended term sentences. (Vol. II, C. 12) Mr. Johnson argued that the maximum aggregate sentence he could have faced, given that he was not given extended term sentences, was sixty years, two sentences of 30 years, pursuant to 730 ILCS 5-8-1 (West 1992); 730 ILCS 5-5-3.2 (West 1992); 730 ILCS 5-8-2 (West 1992). (Vol. II, R. 112-14)

Initially, the trial court treated the petition as a post-conviction petition and summarily dismissed it. However, upon motion by Mr. Johnson for reconsideration on the basis that the petition was in fact a 2-1401 petition, the trial court re-docketed the petition and asked the State to respond. (Vol. I,

C. 27, 20-26; Supp. Vol. May 6, 2004)  The State filed a motion to dismiss arguing that the maximum aggregate sentence William Johnson faced was 120 years, not 60. In support of this assertion the State cited, and presented to the court, two decisions of the appellate court, released as Rule 23 orders. *People v. Lofton*, 4-00-0963, and *People v. Holmes*, 4-00-0962. (Vol. I, C. 31-61) Mr. Johnson then responded to the State's motion to dismiss, re-asserting his original argument, and asking the trial court to strike the attached cases of *Holmes* and *Lofton* because they were Rule 23 orders, and therefore had no precedential value.  (Vol. I, C. 66-73)

On June 21, 2004, the trial court held a hearing on the motion, for which Mr. Johnson was not present. The State asked the court to grant the petitioner's motion to strike those portions of the State's motion to dismiss which referenced *Holmes* and *Lofton*.  The trial court then took the matter under advisement.  (Supp. Vol. June 21, 2004, R. 2-3)  On June 22, 2004, the court allowed the motion to dismiss, finding the maximum allowable sentence to be 120 years.  (Vol. I, C. 80)

On August 1, 2006, the appellate court affirmed the decision of the trail court dismissing William Johnson's 2-1401 petition on the grounds that the maximum aggregate of consecutive sentences was 120 years.  *People v. William Johnson*, Appendix at A4 - A7.

## V.

### POINT RELIED UPON FOR REVERSAL

**WILLIAM JOHNSON'S CONSECUTIVE SENTENCES TOTALING 90 YEARS ARE VOID, AND MUST BE MODIFIED TO A TOTAL NOT EXCEEDING SIXTY YEARS, THE MAXIMUM AUTHORIZED BY LAW.**

The central legal question presented by this case is, should the phrase "maximum sentence" be given the opposite meaning from the phrase "maximum terms authorized?" If the above phrases are treated similarly, then Mr. Johnson's aggregate sentence can only be 60 years, and the excess 30 years of his 90-year term is void. Because section 5-8-4(c)(2) sets the upper limit for aggregating consecutive sentences, its interpretation is an important issue both to prisoners, whose sentences are governed by it, and to Illinois Courts, which must consider section 5-8-4(c)(2) whenever consecutive sentences are imposed.

William Johnson was given the following sentences for his aggravated criminal sexual assault convictions: Count I, 30 years; Count II, 10 years; Count III, 10 years; Count IV, 10 years; Count V, 10 years; and for home invasion, Count VII, 20 years. (Vol. I, C. 138-145; Vol. VI, R. 36; Vol. I, C. 208) The total of the six terms is 90 years.

This total is unauthorized by law, and hence void, as the total of the sentences cannot exceed the sum of the maximum terms authorized under 730 ILCS 5/5-8-2 (West 1992) for the two most serious felonies involved. Because the maximum term authorized under that section for each of William Johnson's most serious offenses is thirty years, the total of his consecutive sentences cannot exceed sixty years. His sentences must be vacated, and the case remanded for re-sentencing not to exceed 60 years in

-6-

prison. Alternatively, this Court should reduce the petitioner's overall sentence to sixty years.

Section 5-8-4(c)(2), which sets the upper limit for aggregating consecutive prison sentences, contains similar language to section 5-2-4(b). Section 5-8-4(c)(2) provides that "the aggregate of consecutive sentences . . . shall not exceed the sum of the *maximum terms authorized* under Section 5-8-2 for the 2 most serious felonies involved. . . ." (Emphasis added). Section 5-8-2, in turn, prohibits imposition of an extended term "unless the factors in aggravation set forth in paragraph (b) of Section 5-5-3.2 were found to be present." Section 5-8-2 further provided that a court "may sentence an offender" to extended term "[w]here the judge finds that such factors are present." Section 5-8-2 thus does not "authorize" extended terms unless the court finds that one of the listed factors applies to the defendant. Accordingly, the phrase "maximum term authorized under Section 5-8-2," contained in section 5-8-4(c)(2) appears to have the same meaning as the phrase "maximum sentence" as contained in section 5-2-4(b), the insanity acquittee statute.

The legislature defines crimes and establishes criminal penalties, and the "trial court, upon determination of guilt, has no authority to assess a fine or impose a sentence other than that provided by statute." *People v. Wade*, 116 Ill.2d 1, 6, 506 N.E.2d 954, 956 (1987) (citations omitted). "Such legislative action necessarily limits the inquiry and function of the judiciary in imposing sentences." *People ex rel. Carey v. Chrastka*, 83 Ill.2d 67, 79, 415 N.E.2d 1269, 1275 (1980). Where a court "imposes a sentence in excess of what the statute permits, . . . the excess portion of the sentence is void." *In re T.E.*, 85 Ill.2d 326, 333, 423 N.E.2d 910, 913 (1981) (citations omitted). If a court's order is void,

-7-

it may be challenged at any time. *In re T.E.*, 85 Ill.2d at 333, 423 N.E.2d at 913. Construing a statutory scheme involves a question of law where *de novo* review is appropriate. *People v. Robinson*, 172 Ill.2d 452, 457, 667 N.E.2d 1305, 1307 (1996). Thus, *de novo* review is the applicable standard of review.

The legislature authorized the courts to impose consecutive sentences. 730 ILCS 5/5-8-4 (West 1992). However, the legislature set a limit on the aggregate of the consecutive sentences a court could impose on an individual. "[T]he aggregate of consecutive sentences shall not exceed the sum of the maximum terms authorized under Section 5-8-2 for the 2 most serious felonies involved." 730 ILCS 5/5-8-4(c)(2) (West 1992). Section 5-8-2 of the Unified Code of Corrections ("the Code") provides, in part:

> Extended Term. (a) A judge shall not sentence an offender to a term of imprisonment in excess of the maximum sentence authorized by Section 5-8-1 for the class of the most serious offense of which the offender was convicted unless the factors in aggravation set forth in paragraph (b) of Section 5-5-3.2 were found to be present. Where the judge finds that such factors were present, he may sentence an offender to the following:
>
> *          *          *
>
> (2) for a Class X felony, a term shall be not less than 30 years and not more than 60 years;
>
> 730 ILCS 5/5-8-2(a)(2) (West 1992).

Section 5-8-1(a)(3) sets the penalty range at six to thirty years for a Class X felony. Thus, the maximum prison term authorized by section 5-8-2 for

a Class X felony is thirty years, unless one or more of the 730 ILCS 5/5-5-3.2(b) (West 1992) aggravating factors is found by the sentencing judge, in which case section 5-8-2 authorizes a maximum term of sixty years.

Under the case law of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct 2348 (2000), aggravating factors are findings of fact which must be found by a jury, unless otherwise waived. As the Illinois Supreme Court recently stated, "the aggravating factor is the functional equivalent of an element of a greater offense." *People v. Mata*, 217 Ill.2d 535, 545, 842 N.E.2d 686, 692 (2006). Because the imposition of a greater sentence based upon an aggravating factor is the equivalent of a greater offense, the maximum term authorized for a defendant who has not had an extended term imposed must be the aggregate of the maximum non-extended term sentence.

Here, the sentencing judge never found that any of the extended-term factors applied to William Johnson, and did not impose an extended term on any of the offenses. (Vol. III, R. 15-16; Supp. Vol. XI, R. 33-42) Thus, under the clear language of the statutory scheme, the total of the consecutive sentences imposed on Mr. Johnson could not exceed sixty years, and the excess portion of his 90-year sentence is void.

This interpretation of section 5-8-2 is consistent with and supported by this Court's opinions in *People v. Palmer*, 148 Ill.2d 70, 592 N.E.2d 940 (1992), and *People v. Pastewski*, 164 Ill.2d 189, 647 N.E.2d 278 (1995), which address the maximum period a person can be committed after having been found not guilty by reason of insanity. The involuntary commitment period after an insanity acquittal "shall not exceed the maximum length of time that the defendant would have been required to serve, less credit for good behavior,

-9-

before becoming eligible for release had he been convicted of and received the maximum sentence for the most serious crime for which he has been acquitted by reason of insanity." 730 ILCS 5/5-2-4(b) (West 1992). This Court in *Palmer* interpreted section 5-2-4(b)'s "maximum sentence" as being subject to a defendant's eligibility for an extended term, stating,

> It is clear that the trial court may commit an insanity acquittee to a maximum period by reference to section 5-8-1. *In order to commit an insanity acquittee by reference to the extended-term statute, however, the trial court must first find that the insanity acquittee's offense comes within the statutory requirements for application of section 5-8-2(a).* Section 5-8-2(a) refers to the factors in aggravation set forth in paragraph (b) of section 5-5-3.2. Section 5-5-3.2(b)(2) requires that, in order for an extended-term sentence to be applicable, the trial court must find that the offense is accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty.
>
> *Palmer*, 148 Ill.2d at 86, 592 N.E.2d at 947 (emphasis added).

Because an insanity acquittee's conduct does not indicate wanton cruelty, a judge could not resort to section 5-5-3.2(b)(2) to calculate the length of his commitment term. *Palmer*, 148 Ill.2d at 92-94, 592 N.E.2d at 950-51.

In contrast, in *Pastewski*, this Court held that the judge properly resorted to section 5-5-3.2(b) in setting the maximum period of the insanity acquittee's commitment, where the acquittee, by reason of his prior convictions, would

-10-

have qualified for an extended term sentence had he been found guilty. *Pastewski*, 164 Ill.2d at 196-98, 647 N.E.2d at 282-83.

Thus, whether one seeks "the maximum terms authorized under Section 5-8-2" as stated in section 5-8-4(c)(2), or "the maximum sentence" as stated in section 5-2-4(b), the path leads to section 5-8-2(a). According to *Palmer* and *Pastewski*, a judge can rely on the higher limits set by section 5-8-2 only if the individual before the court qualifies for those limits under the companion section, 5-5-3.2(b). There is no rational distinction the phrases "maximum sentence" and "maximum terms" used respectively in section 5-2-4(b) and section 5-8-4(c)(2). Both clearly refer to the maximum length of time that a prisoner or insanity acquittee may be confined.

Also, reading section 5-8-4(c)(2) to further limit the total of consecutive sentences when a section 5-5-3.2(b) factor is not present obtains support from the well-recognized notion that a judge is to tailor the punishment to fit the particular case before the court. *See* Ill. Const. 1970, art. VI, sec. 11 ("All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship"); *People v. Perruquet*, 68 Ill.2d 149, 154, 368 N.E.2d 882, 884 (1977) ("A reasoned judgment as to the proper sentence to be imposed must be based upon the particular circumstances of each individual case"). Indeed, the legislature has made individualized sentencing one of the purposes of the Code containing section 5-8-4(c)(2). 730 ILCS 5/1-1-2(a) (West 1998) states that one purpose of the Unified Code of Corrections is to "prescribe sanctions proportionate to the seriousness of the offenses and permit the recognition of differences in rehabilitation possibilities among individual offenders[.]"

The petitioner acknowledges adverse appellate court authority concerning his claim of error, including the decision in the instant case, but contends that those opinions are inconsistent with the plain language of the statutory scheme as well as *Palmer* and *Pastewski*. The appellate court has several times held that section 5-8-4(c)(2) allows a judge to impose consecutive sentences totaling more than twice the maximum nonextended terms for the two most serious offenses involved, even though the offender is not eligible under section 5-3.2(b) for an extended term for any of his offenses. In the seminal case, *People v. Woods*, 131 Ill.App.3d 51, 55, 475 N.E.2d 589, 592 (1st Dist. 1985), the appellate court stated without citation to supporting authority that, "[i]n our judgment defendant has misread section 5-8-4(c)(2), which refers to section 5-8-2 only as a measuring statute. Defendant need not meet the separate qualifications for an extended-term sentence." The appellate court adhered to *Woods* in *People v. Beck*, 190 Ill.App.3d 748, 546 N.E.2d 1127 (5th Dist. 1989), reasoning as follows:

> In the instant case, as in *Woods*, the defendant has failed to cite authority supporting his argument that, since he is not eligible for an extended-term sentence, the sentencing court could not use the term set forth in the extended-term statute to calculate the aggregate of the consecutive sentences the court could impose. The eligibility requirements for consecutive sentences are stated in the consecutive sentence statute – section 5-8-4 of the Unified Code of Corrections – not in the extended-term statute –

section 5-8-2 of the Unified Code of Corrections – and nothing in section 5-8-4 precludes the imposition of consecutive sentences on offenders under the age of 17. *Woods* is persuasive authority for our conclusion that the extended-term statute serves the purpose of a measuring statute for the consecutive sentence statute.

*Beck*, 190 Ill.App.3d at 763-64, 546 N.E.2d at 1136-37.

The appellate court also followed *Woods* in *People v. Myrieckes*, 315 Ill.App.3d 478, 734 N.E.2d 188 (3rd Dist. 2000), stating, "[w]e believe, however, that the first district [in *Woods*] correctly construed section 5-8-4(c)(2). The plain language of section 5-8-4(c)(2) refers to the 'maximum terms *authorized*' by section 5-8-2, not to the maximum terms for which a particular defendant is eligible." *Myrieckes*, 315 Ill.App.3d at 482, 734 N.E.2d at 192 (emphasis in original). In the instant case, the appellate court followed the holdings of *Myrieckes*, *Beck*, and *Woods*. *People v. Johnson,* Appendix at A4.

*Woods*, *Beck*, and *Myrieckes* are unpersuasive. Certainly the legislature could not have intended that the term "maximum" in section 5-2-4(b) and section 5-8-4(c)(2) have two completely different meanings, especially when in both settings it depends for its meaning on the same statute, section 5-8-2(a). None of these cases can be logically reconciled with the rationale in *Palmer* and *Pastewski*. Indeed, *Woods* and *Beck* were decided prior to *Palmer* and *Pastewski*, and could not have addressed those opinions. The opinion in *Myrieckes* does not mention either *Palmer* or *Pastewski*, and offers no reason to disregard the logic of this Court in those cases.

The above three appellate court opinions also contradict established principles of statutory construction because they ignore or render meaningless the word "authorized" in section 5-8-4(c)(2). A statute should be construed so that no word or phrase is rendered meaningless or superfluous. *Langendorf v. City of Urbana*, 197 Ill.2d 100, 109, 754 N.E.2d 320, 325 (2001). Also, by subtle construction or other means, a court may not read out of a statute a limitation which the legislature has seen fit to enact. *Palmer*, 148 Ill.2d at 85, 592 N.E.2d at 947. Statutory language should be given its plain and ordinary meaning. *Robinson*, 172 Ill.2d at 457, 667 N.E.2d at 1307. Yet, the above Appellate Court opinions have read section 5-8-4(c)(2) as though it were written: "the aggregate of consecutive sentences shall not exceed the sum of the maximum terms *listed* under Section 5-8-2 for the 2 most serious felonies involved." (Emphasis added).

What is authorized by section 5-8-4(c)(2) clearly depends on what is "authorized" by section 5-8-2. Section 5-8-2, in turn, is limited by section 5-5-3.2(b) and linked to section 5-8-1(a). As stated in *People v. Neal*, 111 Ill.2d 180, 204, 489 N.E.2d 845, 855 (1985), "[t]he statute authorizing extended terms refers to and is bottomed on, in a sense, the maximum sentences 'authorized by Section 5-8-1,' to which it refers." When one reads these three sections (5-8-4(c)(2), 5-8-2 and 5-5-3.2(b)) together, it is clear that section 5-8-4(c)(2) prohibits the total of consecutive terms to be based on extended-term sentencing limits unless the fact finder, consistent with section 5-5-3.2(b), finds that such a factor is present. If no such factor is present, the judge shall not sentence an offender to consecutive terms totaling more than the maximum sentences authorized by section 5-8-1 (*i.e.*, nonextended-term sentences) for the two most serious felonies involved.

-14-

Contrary to the appellate court's findings, the petitioner's construction of section 5-8-4(c)(2), section 5-8-2, and section 5–5-3.2(b) is not foreclosed by language in the Court's opinion in *People v. Tucker*, 167 Ill.2d 431, 657 N.E.2d 1009 (1995). *Johnson,* Appendix at A5 - A6.  In *Tucker*, Mr. Tucker actually received, and thus apparently qualified for, extended term sentences. *Tucker*, 167 Ill.2d at 437, 657 N.E.2d at 1011-12.  The Court remarked in *dicta* that "section 5-8-4(c)(2) refers to the aggregate of the maximum *extended* terms authorized for the two most serious felonies involved." *Id.* (emphasis in original). Because the circuit court apparently found Tucker eligible for, and imposed extended-term sentences, *Tucker* is consistent with Mr. Johnson's construction of the above statutes. In Tucker's case, the authorized maximum penalty was the sum of the maximum extended term penalty for the two most serious convictions.

In summary, Mr. Johnson was not found to have qualified for an extended term sentence by the court.  Thus, the aggregate of his consecutive sentences for his Class X felonies cannot exceed sixty years.  He therefore asks that this Court grant leave to appeal.

# VI.

# CONCLUSION

William Johnson, petitioner-appellant, respectfully requests that this Court grant leave to appeal.

Respectfully submitted,

DANIEL D. YUHAS
Deputy Defender
Office of the State Appellate Defender
400 West Monroe Street, Suite 303
P.O. Box 5240
Springfield, IL 62705-5240
(217) 782-3654

CATHERINE K. HART
Assistant Defender

COUNSEL FOR PETITIONER-APPELLANT

**E-FILED**
Friday, 27 July, 2007  12:01:55 PM
Clerk, U.S. District Court, ILCD

103308

**SUPREME COURT OF ILLINOIS**
**CLERK OF THE COURT**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

November 29, 2006

Hon. Lisa Madigan
Attorney General, Criminal Appeals Div.
100 West Randolph St., 12th Floor
Chicago, IL 60601

No. 103308 - People State of Illinois, respondent, v. William
            Johnson, petitioner.  Leave to appeal, Appellate
            Court, Fourth District.

The Supreme Court today DENIED the petition for leave to

appeal in the above entitled cause.

The mandate of this Court will issue to the Appellate Court

on January 4, 2007.

EXHIBIT I